*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0351P (6th Cir.)
File Name: 00a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EVERETT HADIX, et al. (96-
2567/2568); MARY GLOVER,
et al. (96-2586/2588),
     *Plaintiffs-Appellees/*
     *Cross-Appellants,*

     *v.*

PERRY M. JOHNSON, et al.,
     *Defendants-Appellants/*
     *Cross-Appellees,*

UNITED STATES OF AMERICA,
     *Intervenor.*

Nos. 96-2567/
2568/2586/2588

Upon Remand by the Supreme Court of the United States.
Nos. 80-73581; 77-71229—John Feikens, District Judge.

Argued: June 13, 2000

Decided and Filed: October 4, 2000

Before: KENNEDY, JONES, and SUHRHEINRICH,
Circuit Judges.

1

_____

**COUNSEL**

**ARGUED:**    Leo H. Friedman, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION, Lansing, Michigan, for Appellants.  Daniel Kaplan, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Intervenor.  Deborah A. LaBelle, LAW OFFICE OF DEBORAH LABELLE, Ann Arbor, Michigan, for Appellees.  **ON BRIEF:**  Leo H. Friedman, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION, Lansing, Michigan, for Appellants.  Daniel Kaplan, U.S. DEPARTMENT OF JUSTICE, CIVIL DIVISION, Washington, D.C., for Intervenor.  Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS DIVISION, Columbus, Ohio, for Amicus Curiae.  Deborah A. LaBelle, LAW OFFICE OF DEBORAH LABELLE, Ann Arbor, Michigan, for Appellees.

KENNEDY, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined.  JONES, J. (pp. 14-15), delivered a separate dissenting opinion.

_____

**OPINION**

_____

KENNEDY, Circuit Judge.  We are presented with the issue of whether the attorney fee cap set forth in § 803(d)(3) of the Prison Litigation Reform Act violates plaintiffs' constitutional rights under the implied Equal Protection Provision of the Fifth Amendment.  Plaintiffs seek attorney fees for post-judgment compliance monitoring and argue that by capping the fees they may recover, § 803(d)(3) deprives them of the equal protection guaranteed by the Constitution.  The district court concluded that § 803(d)(3) does not violate plaintiffs' equal protection rights and plaintiffs appealed.  Because plaintiffs have failed to show that § 803(d)(3) is not

victory and any fees award.  *See id.*  It is thus that the Supreme Court has held that in civil rights suits for compensatory damages, attorneys fees should not be awarded to a prevailing plaintiff that receives only nominal damages.  *See id.* at 115.  In this regard, it is clear that § 1988 is not designed "to produce windfalls for attorneys."  *Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (plurality opinion) (quoting S. Rep. No. 94-1011, p.6 (1976) U.S. Code Cong. & Admin. News 1976 pp. 5908, 5913).

In this context, it is evident that § 1988 does not authorize attorneys' fees for frivolous or trivial lawsuits.  *See Walker v. Bain*, 65 F.Supp.2d 591, 603 (E.D. Mich. 1999) (holding that § 803(d) is not rationally related to goal of deterring frivolous lawsuits).  As a predicate to eligibility for fees under § 1988, a plaintiff must not only prevail in a § 1983 action, but must receive substantial relief on the merits of her claim.  *See Farrar*, 506 U.S. at 115 (providing that fees should not be awarded where only nominal damages are awarded).  Prevailing claims, by definition, are not frivolous, and claims where a § 1983 plaintiff obtains sufficiently substantial relief to warrant fees under § 1988 are, by definition, not "marginal or trivial."  *Ante* at 8.

Given that § 1988 does not permit a fees award for frivolous or trivial suits, the fees limitation of § 803(d)(3) cannot be rationally related to either of these purposes.  Moreover, unless reducing the meritorious, non-trivial claims of prisoners is a legitimate constitutional objective, which has not been averred by any of the parties, the derivative objectives advanced by the parties -- preserving governmental resources, reducing prisoner incentives to file § 1983 actions, and reducing federal oversight of state prisons -- are similarly not rationally related to § 803(d)(3).

Because no rational basis supports § 803(d)(3)'s isolation of prisoners for discriminatory treatment, I respectfully dissent from the majority's opinion.

---

**DISSENT**

---

NATHANIEL R. JONES, Circuit Judge, dissenting: Because I believe that § 803(d)(3) is not rationally related to a legitimate legislative purpose, I respectfully dissent. The majority reaches a contrary conclusion primarily by disconnecting the attorneys' fee cap mandated by § 803(d)(3) from the fees otherwise available under 42 U.S.C. § 1988. It is only through such a reading of § 803(d)(3) that the majority deems the statute rationally related to the goal of "decreasing marginal or trivial lawsuits." *See Ante* at 8. As a corollary to the purpose of reducing trivial lawsuits, the majority extrapolates that the statute conserves the resources of the state and federal treasuries out of which the fees are paid. *Id.* at 9. However, when one assesses the rationality of § 803(d)(3) through the lens of the fees otherwise available under § 1988, it becomes clear that no constitutionally rational basis supports the statute.

Section 1988 authorizes courts to award "reasonable" attorneys' fees to the "prevailing party" in a § 1983 action. *See* 42 U.S.C. § 1988(b); *City of Cleveland v. Nation of Islam*, No. 96-3291, 1997 WL 469533, at *1 (6th Cir. 1997) (unpublished opinion). The plain language of the statute requires "that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). Specifically, a plaintiff does not prevail unless "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). In assessing the amount of fees to be awarded to a prevailing plaintiff, the primary consideration is the degree of success obtained by the claimant. *See id.* at 114. Section 1988's reasonableness requirement therefore mandates a proportionality between the degree of a plaintiff's

rationally related to any conceivable legitimate legislative purpose we affirm the district court.

**I.**

These appeals were previously consolidated for oral argument before this Court on the issue of whether the attorney fee limitations set forth in § 803(d)(3) of the Prison Litigation Reform Act ("PLRA" or the "Act"), 42 U.S.C. § 1997e(d)(3), limited attorney fees earned after the Act's passage in cases which preexisted the Act. This Court held that the PLRA's attorney fees provisions were inapplicable to fees earned following the enactment of the PLRA, in cases filed before the Act's passage. *See Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998). Because we concluded that the fee provisions of the PLRA were inapplicable to plaintiff, we declined to reach plaintiff's argument that § 803(d)(3) was unconstitutional. *Id.* at 250 n.1.

Following our decision, defendants petitioned the United States Supreme Court for certiorari. The Court granted defendants' petition and affirmed in part and reversed in part, concluding that while the fee provisions of the PLRA could not be retroactively applied to services performed prior to the Act's passage, the provisions would apply to any fees earned following the passage of the Act. *See Martin v. Hadix*, 527 U.S. ___, 144 L. Ed. 2d 347 (1999). The Court did not address the constitutionality of § 803(d)(3) and remanded the case to this Court for further proceedings.

**II.**

We are now squarely confronted with the question of whether § 803(d)(3) of the PLRA results in a deprivation of the Equal Protection guaranteed by the implied equal

protection provision of the Fifth Amendment.[1]  Section 803(d) provides in relevant part:

> (d) Attorney's fees
>
>  (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 [FN1] of this title, such fees shall not be awarded, except to the extent that--
> (B)(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. . . .
>
>  (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

We review de novo plaintiffs' challenge of the constitutionality of this federal statute. *See United States v. Brown*, 25 F.3d 307, 308–09 (6th Cir. 1994).

**A.**

Plaintiffs argue that § 803(d)(3) violates the equal protection clause of the United States Constitution by capping the hourly rate for attorney fees that prisoners may recover, while leaving other civil rights plaintiffs free to recover reasonable attorney fees under 42 U.S.C. § 1988 at the

Fifth Amendment.  Accordingly, we AFFIRM the judgment of the district court.

---

[1]As the United States recognizes in its brief, only the fee cap provisions are before the panel in this appeal, as the attorney fees at issue arose from post-judgment compliance monitoring.  Thus, we need not address the constitutionality of § 803(d)(2), which requires up to 25% of any judgment a prisoner obtains to be applied against any attorney fees awarded under this section.

or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Id*. at 319–20, 113 S. Ct. at 2642 (citations and quotations omitted). Although the means that Congress employed do not tightly fit the ends it sought to achieve, we are compelled to except Congress' legislative generalizations. *See Heller*, 509 U.S. at 321, 113 S. Ct. at 2643. Accordingly, because plaintiffs have failed to negate every conceivable rational basis Congress may have had in enacting the PLRA's hourly rate cap for attorney fees, we must conclude that § 803(d)(3) of the PLRA survives rational basis review.[8]

### III.

For the foregoing reasons, we hold that § 803(d)(3) of the PLRA, 42 U.S.C. § 1997e(d)(3), does not violate plaintiff's rights under the implied equal protection provision of the

---

[8]We note that the hourly rate chosen by Congress under § 803(d)(3) is also a matter of legislative judgment which we will not overturn unless it is demonstrated that Congress could not have reasonably conceived the rate as appropriate to achieve its legitimate objectives. *See, e.g. Vance v. Bradley*, 440 U.S. 110–112, 99 S. Ct. 939, 949–950, 59 L. Ed. 2d 171 (1979). Plaintiff has made no such showing.

prevailing market rate.[2] We begin our analysis of plaintiff's claimed equal protection violation by determining the level of scrutiny to apply to the classifications Congress made in enacting § 803(d)(3).

Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439–47, 105 S. Ct. 3249, 3254–58, 87 L. Ed. 2d 313 (1985); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973). Prisoners are not a suspect class, *see Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) (citing *Harris v. McRae*, 448 U.S. 297, 323, 100 S. Ct. 2733, 65 L. Ed. 2d 784 (1980)), and plaintiffs have not alleged that a fundamental right is at issue. Consequently, as plaintiffs appear to concede, in order to establish a violation of equal protection, plaintiffs must show that § 803(d)(3) is not rationally related to any conceivable legitimate legislative purpose. *See Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S. Ct. 1001, 1006, 35 L. Ed. 2d 351 (1973). Under this standard the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2643, 125 L. Ed. 2d 257 (1993). The government has no obligation to produce evidence to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2098, 124 L. Ed. 2d 211 (1993). The legislature is not even required to articulate any purpose or rationale in support of its

---

[2]In the Eastern District of Michigan, $75.00 per hour is the maximum amount that a court appointed attorney may recover under 18 U.S.C. § 3006A(d)(1). Section 803(d)(3) thus caps the attorney fee recoverable at $112.50 per hour (150% of the $75.00 maximum).

legislation.  *See Nordlinger v. Hahn*, 505 U.S. 1,15, 112 S. Ct. 2326, 2334, 120 L. Ed. 2d 1 (1992).  Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record." *Heller*, 509 U.S. at 320, 113 S. Ct. at 2643.  That being said, rational basis review is not a rubber stamp of all legislative action, as discrimination that can *only* be viewed as arbitrary and irrational *will* violate the Equal Protection Clause.  *See Vance v. Bradley*, 440 U.S. 93, 97, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979) (stating that a law will fail rational basis review if "the varying treatment of different groups of persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [legislature's] actions were irrational").

**B.**

Defendants, the United States as intervenor, and the State of Ohio as Amicus Curiae (collectively refered to as the "government" for convenience) contend that different treatment that § 803(d)(3) affords incarcerated civil rights litigants is rationally related to several legitimate legislative purposes.  Namely, the government argues that the provisions serve to: deter the filing of frivolous lawsuits by prisoners, reduce trivial or inconsequential suits, reduce judicial intervention into the management of prisons, prevent windfall fee awards, and protect the public fisc.

Plaintiffs agree that the Congress' intent in enacting the PLRA was to reduce the large number of frivolous lawsuits brought by prisoners. *See* 141 Cong. Rec. S7498-01(daily ed. May 25, 1995) (statement of Sen. Dole) ("We have witnessed an alarming explosion in the number of frivolous lawsuits filed by Stated and Federal prisoners . . . . Frivolous lawsuits filed by prisoners tie up the courts, waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law abiding population"); *see also* 141 Cong. Rec. S14316 (daily ed., Sept. 26, 1995) (statement of Sen.

if they succeed on some technicality.").[6]  Accordingly, while employing imprecise means, Congress did not act irrationally in limiting the attorney fees that lawyers may recover for their representation of prevailing prisoner civil rights litigants.[7]

While plaintiff has raised some well founded criticisms of the methods Congress employed to achieve its purpose, it is not our province to judge  the wisdom, fairness, or logic of Congress's decision to enact the legislation at issue.  *See Heller*, 509 U.S. at 321, 113 S. Ct. at 2642; *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2100-2101, 124 L. Ed. 2d 211 (1993); *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S. Ct. 1153, 1162, 25 L. Ed. 2d 491 (1970).  The Supreme Court emphasized this point in *Heller* with an extensive discussion of the issue:

> [Rational-basis review] does [not] authorize the judiciary to sit as a superlegislature to judge the wisdom

---

[6] The State of Ohio as Amicus Curiae cites G. Cole, R. Hanson, and J. Gilbert, *Alternative Dispute Resolution for Prisoner Grievances: A Reference Manual for Averting Litigation* 5–6 (National Institute of Corrections 1984), as observing "Many non-frivolous suits concern small monetary sums, and the time devoted to them by administrators is disproportionate to the amounts involved.").

[7] The government argues that the attorney fee cap provisions may reduce judicial over-involvement in the day to day administration of our nation's prisons.  The legislative history of the PLRA also shows that Congress was concerned with this issue. *See, e.g., Prison Reform: Enhancing the Effectiveness of Incarceration: Hearings on S.3, S.38, S.400, S.866, S.930 and H.R. 667 Before the Committee on the Judiciary of the United States Senate*, S. Hrg. 104-573 at 3–7, 26–32 (1995), *reprinted in* Bernard D. Reams and William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134 110 Stat. 1321*, Document No. 55 (statements of Sen. Spencer Abraham and Former Attorney General William P. Barr).  However, because we conclude that the attorney fee cap provision is rationally related to the goal of reducing trivial claims and protecting the public fisc, we need not determine whether Congress's goal of reducing judicial involvement would also provide a rational basis for enacting § 803(d)(3).

H1042 (daily ed. Feb. 1, 1995) (statement of Rep. Hoke) ("[T]his provision eliminates the financial incentive for prisoners [lawyers] to include numerous non-meritorious claims in sweeping institutional reform litigation."). A review of the legislative history makes it clear that Congress believed that the explosion of prisoner civil rights litigation that has occurred since the passage of 42 U.S.C. § 1988 has placed an excessive financial burden on the prison administration, the state treasury, and the federal judiciary. *See e.g.*, 141 Cong. Rec. S14,626–27 (daily ed. Sep. 29, 1995) (statements of Sens. Hatch, Dole, and Reid). Congress may have reasonably believed that many of these claims involved trivial or frivolous allegations, particulary when compared to the relief sought in civil rights litigation brought on behalf of non-incarcerated plaintiffs. Consequently, Congress could have rationally concluded that such prisoner civil rights litigation leads to attorney fees which are often disproportionate when compared with the result obtained for a similar fee in non-prisoner civil rights litigation.[5] *See Prison Reform: Enhancing the Effectiveness of Incarceration: Hearings on S.3, S.38, S.400, S.866, S.930 and H.R. 667 Before the Committee on the Judiciary of the United States Senate*, S. Hrg. 104-573 at 108 (1995), *reprinted in* Bernard D. Reams and William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134 110 Stat. 1321*, Document No. 55 (statement of O. Lane McCotter, Director, Utah Dept. of Correction) ("The driving force behind [the] flood of prison litigation" is a "nothing to lose" attitude by prisoners, and lawyers driven by "the prospect of obtaining all of their highly inflated fees and costs

---

[5]The dissent's allegation that § 803(d)(3) cannot be rationally related to protecting state and federal treasuries unless reducing the number of meritorious, non-trivial claims of prisoners is a legitimate constitutional objective fails to recognize the circumstances specific to prisoners that may increase the number of trivial or frivolous allegations a prisoner may file as compared to a non-prisoner. Congress could have rationally thought that § 803(d)(3) would eliminate this distinction and thus preserve some governmental resources.

Abraham) (in addition to problems with "massive judicial interventions in state prison systems, we also have [the problem of] frivolous inmate litigation."). However, plaintiffs assert that the attorney fee provisions of the PLRA are unrelated to this goal, since only prevailing parties may collect attorney fees under 42 U.S.C. § 1988. Further, plaintiffs point out that the majority of prisoner lawsuits filed in federal court are *pro se*, with most frivolous suits being dismissed by the district court prior to appointment of counsel. Finally, plaintiffs argue that under *Rinaldi v. Yeager*, 384 U.S. 305, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966), any intent on the part of Congress to deter frivolous litigation is illegitimate. In *Rinaldi*, the Supreme Court evaluated the constitutionality of a statute which singled out imprisoned indigent defendants by requiring them to pay for the cost of transcripts if their appeals were unsuccessful. Indigent defendants who were not incarcerated were not required to bear such costs. The state defended the law on the grounds that it was rationally related to the goal of deterring frivolous appeals. The Supreme Court held otherwise, noting that: "[b]y imposing a financial obligation only upon inmates of institutions, the statute inevitably burdens many whose appeals, though unsuccessful, were not frivolous, and leaves untouched many whose appeals may have been frivolous indeed." *Id.* at 310.

The government distinguishes *Rinaldi* by arguing that there are rational reasons for Congress to single out prisoners by capping the attorney fees they may recover upon prevailing in civil rights litigation due to the peculiar circumstances which influence a prisoner's decision to litigate. Specifically, the government notes that prisoners have substantial quantities of free time, have all their basic needs met, and are provided with free writing materials and often legal assistance. The government also points out that what would normally be thought of as the burdens which attend litigation—such as the large amounts of time spent in depositions, preparing to testify, court appearances and the like—carry few or no opportunity cost to prisoners. Rather, the government

contends that for many prisoners time spent in a court room may well be preferable to time spent in jail.  *See* 141 Cong. Rec. S14,418 (daily ed. Sept. 27, 1995) (statement of Sen. Kyl) (observing that "a courtroom is certainly a more hospitable place to spend an afternoon than a prison cell" and comparing litigation to a "recreational activity" for many prisoners).  Further, the government argues that prisoners may receive unique rewards from litigation, in that it gives litigious prisoners a means of intimidating members of the prison staff.

Plaintiffs argue that the PLRA's attorney fees cap does relatively little to curb truly frivolous lawsuits.[3]  However, the cap does appear to be rationally related to the very similar goal of decreasing marginal or trivial lawsuits.  Prior to the fee cap, an attorney would have little disincentive to take prisoner civil rights claims that alleged a technical, but very trivial violation.  This could lead attorneys to adopt a "shotgun" approach, filing numerous claims in the hopes that at least a minor violation would likely be found, assuring the recovery of attorneys fees.  As the government points out, in lowering the fee recoverable if the claim succeeds, attorneys are likely to demand a more meritorious claim to make the representation worthwhile.  This is due to the fact that in deciding to accept any contingent fee arrangement, an attorney must discount the potential amount recoverable by the estimated probability of success.  Faced with a smaller

---

[3] The government argues that the reduction in attorney fees goes into a prisoner's decision whether to file a claim.  Several courts have agreed with the government's contention.  *See Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999); *Morrison v. Davis*, 88 F.Supp.2d 799, 808 (S.D.OH 2000).  However, with respect to truly frivolous claims, it could be plausibly argued that the provision would have at best a very attenuated affect on the litigation decision of a pro se inmate, whose claims must be certified as possessing at least some merit at an early stage in the litigation. Further, the fee cap provisions only apply to cases in which the prisoner has actually prevailed, thereby assuring that at least one claim was meritorious.  We need not resolve this issue, however, as other rational bases exist for the laws enactment.

---

potential recovery, a rational attorney would demand a greater likelihood of success before taking a prisoner's case.[4]

Thus, Congress could rationally intend the PLRA's attorney fee cap to provide a counter-balance to a prisoner's numerous incentives to litigate, thereby placing prisoner civil rights plaintiffs more closely in the same decision making position as non-prisoner civil rights plaintiffs.  *See* H.R. Rep. No. 104-21, 28 (1995) ("Th[e] proportionality requirement will discourage burdensome litigation of insubstantial claims where the prisoner can establish a technical violation of a federal right but he suffered no real harm from the violation."); *see also Morrison v. Davis*, 88 F.Supp.2d 799, 808 (S.D.OH 2000).  There are certainly some prisoners who would continue the litigation of their marginal claims, even without the help of an attorney, however, it is reasonable to conclude that at least some will be dissuaded by the fact that they will have to shoulder the entire workload themselves.

By reducing marginal or frivolous claims, Congress could also rationally be seeking to protect the state and federal treasuries, from which the majority of prisoner civil rights awards are paid.  One of the problems that Congress noted was, as observed above, that plaintiffs use a "shotgun approach" to filing prison civil rights claims in the hope of prevailing on at least a minor point.  *See* 141 Cong. Rec.

---

[4] The dissent argues that § 803(d)(3) cannot be rationally related to reducing frivolous lawsuits, because § 1988 already only authorizes courts to award reasonable attorneys' fees to the "prevailing party."  In addition, the dissent argues that the "reasonableness" requirement in § 1988 for the amount of attorneys' fees awarded mandates a proportionality between the degree of plaintiff's victory and any fee awarded, and thus § 803(d)(3) cannot be rationally related to reducing trivial claims either.  By reducing the amount of any potential recovery, however, § 803(d)(3) raises the probability of success that such cases must enjoy before an attorney will accept the case.  Thus, § 803 is rationally related to reducing frivolous and trivial claims because it will generate a higher required likelihood of success before any given case is taken.