**Alejandro MADRID, Carlos Lutz, Ronnie Dewberry, Steven Villa, Bruce Vorse, and Moses Johnson, Individually and on Behalf of all Others Similarly Situated, Plaintiffs–Appellees,**

v.

**James GOMEZ, Steven Cambra, Susan Steinberg, M.D., Robert Ayers, Defendants–Appellants.**

**Nos. 96–17277, 96–16237.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1998.

Opinion Decided July 2, 1998.

Opinion Withdrawn July 7, 1999.

Decided Aug. 30, 1999.

---

William Jenkins (argued), Deputy Attorney General, San Francisco, California, for the defendants-appellants.

David S. Steuer, Susan A. Creighton, and Ellen Solomon (argued), Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Califor-

nia; Donald Specter and Steven Fama, Prison Law Office, San Quentin, California, for the plaintiffs-appellees.

Before: HARLINGTON WOOD, JR.,* CYNTHIA HOLCOMB HALL, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide, in light of the Supreme Court's recent decision in *Martin v. Hadix*, — U.S. ——, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), whether the district court correctly applied the Prison Litigation Reform Act in awarding attorney's fees.

I

This case arose as a prisoner civil-rights class action challenging the conditions of confinement at the Pelican Bay State Prison in California. Plaintiffs–Appellees Madrid and others ("prisoners") alleged a multitude of constitutional violations, including a pattern and practice of excessive force against them, provision of inadequate medical and psychiatric care, and failure to maintain humane housing conditions. After a three-month trial, the district court verified many of the prisoners' complaints. Finding numerous constitutional infirmities, and concluding that Defendants–Appellants California Department of Correc-

tions Director Gomez and others ("prison officials") would not rectify these problems on their own, the court ordered the parties to collaborate in developing and implementing a remedial plan.

Anticipating that the district court would also order the prison officials to pay the prisoners' legal expenses during the remedial phase—and seeking to minimize the procedural burdens associated with periodic fee awards—the parties stipulated to, and on September 21, 1995, the district court authorized, an "informal process" of expediting the payments of attorney's fees. Pursuant to this stipulation, which reflected the law at the time, *see Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the prison officials were to pay fees at the current market rate for all legal services that were useful and necessary to ensure compliance.[1] If the prison officials ever disputed an amount and refused to pay, the prisoners could seek an order from the district court to resolve the dispute.

Subsequently, on April 26, 1996, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), limiting the amount of attorney's fees that can be awarded to prisoners' counsel, thereby reducing the burden that prisoners' suits have on the public fisc. Among its restrictions on fee awards, the PLRA caps the maximum hourly rate[2] and prohibits pay-

---

* The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. The district court found that most private attorneys in the Bay area charged hourly rates ranging from $100 upward to $375 or $400, depending on the experience and expertise of the attorney.

2. Section 803(d)(3) of the PLRA provides:
 No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

PLRA § 803(d)(3) (codified at 42 U.S.C. § 1997e(d)(3)). Section 3006A, in turn, provides for rates of $40, $60, and (when the Judicial Conference so provides, as it has for the Northern District of California) $75. *See* 18 U.S.C. § 3006A(d)(1). 150% of $75 is $112.50. Thus, when the PLRA applies, the maximum allowable rate is $112.50 per hour, as compared to the rates authorized by the district court, which ranged from $155 per hour to $305 per hour. The two attorneys most involved in the remedial phase of this case charged $305 per hour and $290 per hour, respectively.

The prisoners point out that the maximum rate under 21 U.S.C. § 848(q)(10) is $125.00,

ment of fees that are not "directly and reasonably" incurred in proving a violation of prisoners' rights.[3] *See* 42 U.S.C. § 1997e(d).

In October 1996, six months after the effective date of the PLRA, the district court made an award of attorney's fees for legal services performed prior to the enactment of the PLRA. In the following June, the district court ordered payment of fees for services performed subsequent to the enactment of the PLRA. In neither case did the district court invoke the PLRA's limitations. According to the court, applying the attorney's fee provisions to a case which was pending at the time of the statute's enactment would produce a "retroactive effect," violative of "basic notions of fair notice, reasonable reliance, and settled expectations."

■ The prison officials have appealed both district court orders. We have jurisdiction pursuant to 28 U.S.C. § 1291.[4]

## II

After we issued our prior (now withdrawn) opinion in this case, *see Madrid v. Gomez,* 150 F.3d 1030 (9th Cir.1998), the Supreme Court specifically dealt with how the attorney's fee provisions of the PLRA apply to cases that were pending when the Act became effective. In *Martin v. Hadix,* —— U.S. ——, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), the Court held that the PLRA "limits attorney's fees with respect to postjudgment monitoring services performed after the PLRA's effective date

but it does not so limit fees for postjudgment monitoring performed before the effective date." *Id.,* 119 S.Ct. at 2001. Because *Martin* directly addresses the legal question presented here, it is dispositive.

The *Martin* Court held that application of the Act's provisions to work performed before the enactment of the Act would have an impermissible retroactive effect because it would upset the attorneys' "reasonable expectation[s] that work they performed prior to the enactment of the PLRA ... would be compensated at the pre-PLRA rates...." *Id.* at 2006. With respect to work performed after the effective date of the Act, however, the Court concluded that attorneys "were on notice that their hourly rate had been adjusted" and, thus, "any expectation of compensation at pre-PLRA rates was unreasonable." *Id.* at 2007. Consequently, applying the PLRA's attorney's fees limitations to work performed after the Act's effective date "does not raise retroactivity concerns." *Id.*

■ Here, the district court held that application of the attorney's fees provisions of the PLRA to cases pending before the Act's effective date, like *Madrid,* would have an impermissible "retroactive effect," violative of "basic notions of fair notice, reasonable reliance, and settled expectations." Thus, the district court refused to apply the PLRA's attorney's fees provisions to either the October 1996 order (for services performed *before* the Act's effec-

---

150% of which is $187.50. This observation is not relevant to the issue before us. Section 803 directs us to 18 U.S.C. § 3006A, not 21 U.S.C. § 848(q)(10). Moreover, nowhere in § 3006A is § 848(q)(10) even mentioned.

3. Section 803(d)(1) of the PLRA provides in relevant part:

In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988], such fees shall not be awarded, except to the extent that—(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights....

PLRA § 803(d)(1) (codified as amended at 42 U.S.C. § 1997e(d)(1)).

4. A periodic fee award made during the remedial phase of a prisoner civil-rights case is appealable if it disposes of the attorney's fees issue for the work performed during the time period covered by the award. *See Gates v. Rowland,* 39 F.3d 1439, 1450 (9th Cir.1994); *Rosenfeld v. United States,* 859 F.2d 717, 720 (9th Cir.1988); *see also Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1494 (award finally disposing of issue of attorney's fees for litigating the case up to a particular time was appealable), *vacated in part,* 804 F.2d 1573 (11th Cir.1986).

tive date) or the June 1997 order (for services performed *after* the Act's effective date).

In light of *Martin*, we must conclude that the district court correctly refused to apply the attorney's fees limitations in its October 1996 order because, although it was entered after the PLRA's effective date, the award was for services performed *prior* to enactment of the PLRA. *Id.* The district court erred, however, in refusing to apply the PLRA's attorney's fees limitations in its June 1997 order because it awarded fees for services performed *after* the enactment. *Id.* Thus, we affirm the October 1996 order but reverse the June 1997 order and remand with directions to award fees consistent with the fees limitations of the PLRA.

### III

The prisoners argue that the PLRA, which limits the amount of fees paid to prisoners' counsel but not to non-prisoners' counsel, violates the equal protection component of the Fifth Amendment.

### A

■ Were we to subject the PLRA's classification to strict scrutiny, we might well conclude it to be unconstitutional unless shown to be narrowly tailored to the achievement of a compelling government interest. *See, e.g., Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). We strictly scrutinize a classification, however, only if it discriminates based on a suspect criterion or impinges upon a fundamental right. *See, e.g., Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

■ According to the prisoners, strict scrutiny is appropriate in this case because

the attorney's fee limitations burden prisoners' fundamental right of access to the courts.[5] The Supreme Court has held that this right of access requires prison authorities to provide prisoners with "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Authorities must, for example, "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Prisoners possess a right of access not only to pursue appeals from criminal convictions but also to assert "civil rights actions," *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), such as the one brought by the prisoners at Pelican Bay to vindicate their Eighth Amendment rights.

■ The scope of the right of access to the courts is quite limited, however. Prisoners need only have "the minimal help necessary" to file legal claims. *Casey*, 518 U.S. at 360, 116 S.Ct. 2174. The Constitution does not even mandate "that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts." *Id.* Certainly, a prisoner has no fundamental right to a high-priced attorney.[6] The PLRA does not restrict access to the courts; at most, it restricts prisoners' access to the most sought-after counsel who insist on their going rate for representation.

■ Moreover, "an inmate cannot establish relevant actual injury simply by

---

5. The prisoners also argue that, by making it more difficult to obtain high-priced counsel, the PLRA impedes their attempts to remedy Eighth Amendment violations, thereby burdening their right to be free from cruel and unusual punishment. However, because this contention is simply a disguised reiteration of their right-of-access claim, we will not address it separately.

6. An alternative holding would profoundly disrupt the status of the law on the public provision of attorney's fees. Currently, even fees paid to capital defendants' counsel are capped by statute at $125 per hour, *see* 21 U.S.C. § 848(q)(10), a far cry from the rates authorized by the district court in this case, which peaked at $305 per hour.

establishing that his … legal assistance program is sub-par in some theoretical sense." *Id.* at 351, 116 S.Ct. 2174. The prisoner must "go one step further and demonstrate that the alleged shortcomings in the … legal assistance program hindered his efforts to pursue a legal claim." *Id.* There has been no such showing in this case. Thus, we reject the prisoners' argument that we must subject the PLRA's attorney's fee provision to strict scrutiny.

### B

 Instead, we simply ask whether there is a rational basis for the classification. Under this minimal standard, the PLRA certainly passes constitutional muster. As the Supreme Court has made clear, "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Rather, the "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

 In this case, the government's interest was apparently to curtail frivolous prisoners' suits and to minimize the costs—which are borne by taxpayers—associated with those suits.[7] *See Zehner v. Trigg,* 133 F.3d 459, 463 (7th Cir.1997); *McGann v. Commissioner of Social Sec. Admin.,* 96 F.3d 28, 31 (2d Cir.1996). The prisoners do not deny that this interest is legitimate. They contend only that the

interest is not rationally related to the distinction drawn between prisoners and all other litigants bringing suits against the state. However, it is certainly conceivable that, because of significant potential gains and low opportunity costs, prisoners generally file a disproportionate number of frivolous suits as compared to the population as a whole.[8] Such speculation is sufficient for a rational-basis examination; there is no need for evidence or empirical data. *See Beach Communications,* 508 U.S. at 315, 113 S.Ct. 2096. Because the burden is on the prisoners "to negative every conceivable basis which might support" the legislation, *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973) (internal quotation marks omitted), and because they have not done so, their equal protection claim fails.

### IV

For the foregoing reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.

---

7. Congress's failure to enunciate its purpose is irrelevant. *See Heller,* 509 U.S. at 320, 113 S.Ct. 2637 ("'[A] legislature that creates these categories need not 'actually articulate at any time the purpose or rationale supporting its classification.'") (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)).

8. It does not matter that the prisoners' suit in this case is non-frivolous. Under the rational-

basis test, a court must uphold legislation "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications,* 508 U.S. at 313, 113 S.Ct. 2096. A court cannot overturn legislation merely because "there is an imperfect fit between means and ends." *Heller,* 509 U.S. at 321, 113 S.Ct. 2637.