RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0081P (6th Cir.)
File Name: 04a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JIMMIE LEE RILEY,
     *Plaintiff-Appellee*

     *v.*        No. 02-1488

DAVID T. KURTZ,
     *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 94-71263—Denise Page Hood, District Judge.

Argued: July 30, 2003

Decided and Filed: March 17, 2004

Before: GILMAN and GIBBONS, Circuit Judges;
JORDAN, District Judge.*

_____

**COUNSEL**

**ARGUED:** Linda M. Olivieri, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant.

_____

*The Honorable Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

---

Daniel E. Manville, LAW OFFICE OF DANIEL E. MANVILLE, Ferndale, Michigan, for Appellee. **ON BRIEF:** John L. Thurber, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Daniel E. Manville, LAW OFFICE OF DANIEL E. MANVILLE, Ferndale, Michigan, for Appellee.

_____

## OPINION

_____

LEON JORDAN, District Judge. Daniel Manville, appointed counsel for the prisoner plaintiff,[1] obtained a jury verdict in favor of his client in a 42 U.S.C. § 1983 action, for which he was awarded attorney's fees as a prevailing party. The defendant appealed only the jury verdict. We overturned the jury verdict on one of the plaintiff's four claims and remanded the case for a new trial on the issue of punitive damages unless the plaintiff accepted a remittitur. The plaintiff chose the remittitur, and an amended judgment was entered by the district court. Mr. Manville then filed an application for appellate fees which was granted. The defendant appeals the district court's award of trial and appellate fees, arguing that the Prison Litigation Reform Act (42 U.S.C. § 1997e) limits an award of attorney's fees. Mr. Manville argues that the defendant failed to appeal the award of attorney's fees for his trial work, and this court does not have jurisdiction to consider the district court's award of these fees. Concerning his request for appellate fees, Mr. Manville argues that the Prison Litigation Reform Act does not apply because an appeal by the defendant is not an "action brought by a prisoner" and application of the Prison Litigation Reform Act under these circumstances would

_____

[1]Since any recovery of attorney's fees will go directly to Mr. Manville, we will refer to the fee application arguments as Mr. Manville's.

violate the Equal Protection Clause. For the reasons set forth below, we **AFFIRM** the judgment of the district court as to the award of trial fees, and **REVERSE** the district court's award of appellate fees.

## I.  BACKGROUND

The plaintiff, a prisoner, filed a *pro se* complaint in the federal district court in 1994. On April 8, 1996, the district court appointed attorney Daniel Manville to represent the plaintiff on a *pro bono* basis. Mr. Manville states that he accepted the appointment with the understanding that if the plaintiff prevailed, he could recover attorney's fees under 42 U.S.C. § 1988. On April 26, 1996, the Prison Litigation Reform Act (PLRA) became effective. In December 1996, Mr. Manville filed a motion to withdraw as counsel for the plaintiff because of the PLRA's potential limit on attorney's fees. The district court denied his motion.

The plaintiff won a jury verdict on all four of his claims for a total damage award of $25,003.00, and judgment was entered in December 1997. On January 5, 1998, Mr. Manville submitted an application for attorney's fees and expenses for his trial work in the amount of $32,097.80. The defendant filed a notice of appeal of the jury verdict on January 12, 1998, but did not appeal Mr. Manville's request for attorney's fees at that time, or later when the district court granted the request (May 30, 1998).

On appeal, this court overturned the verdict on one of the plaintiff's claims and remanded the remaining claims for a new trial on the issue of punitive damages or a remittitur. The plaintiff chose the remittitur, and an amended judgment for $1,003.00 was entered on July 13, 2000. Thereafter, Mr. Manville was allowed to withdraw, and he filed a request for appellate fees and expenses on July 11, 2000, in the amount of $25,754.54. The defendant then objected to both the trial and appellate fee requests as being outside the PLRA's limitations. The matter was referred to a magistrate

judge who determined that Mr. Manville was entitled to his trial fees because the defendant did not appeal that issue in 1998. The district court agreed with the magistrate judge's determination on this point. As to the appellate fees, the district court found that the PLRA does not limit Mr. Manville's appellate fees because Mr. Manville was appointed prior to the enactment of the PLRA; Mr. Manville was not allowed to withdraw from the case; and the PLRA does not apply to time spent by a prevailing prisoner plaintiff defending challenges of judgments by prison officials.

## II.  ANALYSIS

### A.  Standard of Review

This court's review of an application for attorney's fees is for an abuse of discretion. *Glover v. Johnson*, 138 F.3d 229, 251 (6th Cir. 1998). Statutory interpretation, however, is subject to *de novo* review. *Id.* at 249.

### B.  Attorney's Fees Under § 1988 and the Prison Litigation Reform Act – 42 U.S.C. § 1997e

Traditionally, parties to litigation bear their own costs unless a specific statute or contractual provision provides otherwise. In 1976, the courts were given discretion to award a reasonable attorney's fee to prevailing civil rights litigants. *See* 42 U.S.C. § 1988(b); *Glover*, 138 F.3d at 248; *see also Boivin v. Black*, 225 F.3d 36, 39 (1st Cir. 2000) (discussing 42 U.S.C. § 1988(b)). Section 1988(b) provides that a "court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The Supreme Court held in *Farrar* that a plaintiff who is awarded nominal damages may be considered a prevailing party. *Id.* at 112. The size of the

award of damages, however, "does bear on the propriety of fees awarded under § 1988." *Id.* at 114.

In 1996, Congress enacted the PLRA which placed limits on the amount of fees that may be awarded under § 1988 to attorneys who litigate prisoner lawsuits. Section 1997e(d) of Title 42, United States Code, provides in relevant part:

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
(B)(i) the amount of fee is proportionately related to the court ordered relief for the violation; or
(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

Subsection (2) of this portion of the PLRA has been interpreted to mean that an attorney's compensation comes

first from the damages (up to 25 percent), and then, if inadequate, the defendant is liable for attorney's fees under § 1988 up to 150 percent of the money judgment. *See Johnson v. Daley*, 339 F.3d 582, 585 (7th Cir. 2003) (*en banc*), *petition for cert. filed*, 72 U.S.L.W. 3373 (U.S. Nov. 17, 2003); *see also Walker v. Bain*, 257 F.3d 660, 667 (6th Cir. 2001), *cert. denied*, 535 U.S. 1095 (2002). Subsection (3) limits the hourly rate for all attorney's fees awarded under subsection (1).

## C. Mr. Manville's Trial Fees

The defendant argues that the PLRA limits the district court's award of attorney's fees for Mr. Manville's trial work. The total award of money damages, after appeal, was only $1,003.00, so the defendant contends that the district court abused its discretion in awarding Mr. Manville much more than 150 percent of the damages. Mr. Manville argues that the defendant waived any right to contest the amount of the trial attorney's fees because a timely notice of appeal of the fees issue was not filed. We agree that the defendant's failure to file a timely appeal of the award of attorney's fees is dispositive of this issue.

Following a trial, judgment was entered in favor of the plaintiff on December 18, 1997. Mr. Manville filed a request for attorney's fees as counsel for the prevailing party on January 5, 1998. The defendant filed his appeal on January 12, 1998, not raising the issue of Mr. Manville's fee request. On May 30, 1998, the district court awarded Mr. Manville attorney's fees and costs in the amount of $32,097.80. The defendant did not appeal this award. After remand, an amended judgment was entered, but the defendant still did not raise the issue of Mr. Manville's attorney's fees.

Nevertheless, the defendant argues that on remand the district court should have revisited, *sua sponte*, the issue of attorney's fees. At the time the district court awarded Mr. Manville his trial fees, the law in the Sixth Circuit was

that the PLRA did not apply to cases that were pending at the time the PLRA became effective. *See Hadix v. Johnson*, 143 F.3d 246, 252 (6th Cir. 1998). In 1999, however, while the defendant's first appeal was pending in this court, the United States Supreme Court reversed this opinion and held that the PLRA fee limitations apply to attorney work done after the Act became effective even if the case was filed before the effective date. *Martin v. Hadix*, 527 U.S. 343, 360-62 (1999). The defendant argues that the decision in *Martin* required the district court to review its previous fee award in light of the PLRA. We disagree. In our opinion, the district court had no duty to revisit its earlier order, especially in the absence of any objection by the defendant. By the time the case was remanded, the defendant had already waived his right to object to the award of attorney's fees. *See* Fed. R. App. P. 4(a)(1)(A) (providing that a notice of appeal must be filed within thirty days after the order appealed from is entered); *Morgan v. Union Metal Mfg.*, 757 F.2d 792, 794-95 (6th Cir. 1985) (holding that requests for attorney's fees are collateral to the main cause of action and a separate appeal may be taken from the award of attorney's fees).

The defendant also argues that the award of attorney's fees was based on the judgment entered after the jury trial, not the amended judgment, so when the amount of damages was reduced, the district court should have reduced the amount of attorney's fees also. This argument fails to recognize that the district court's award of attorney's fees was pursuant to § 1988 and was not based on the amount of the damages, but on the fact that the plaintiff was the prevailing party and on the amount of time Mr. Manville spent litigating the case. Thus, amending the judgment did not require an amendment of the attorney's fee award.

The district court did not err in concluding that the defendant's failure to appeal the award of trial attorney's fees waived any objection he might have had to the award of fees. With a delay of over two years after the order was entered awarding attorney's fees and costs to Mr. Manville for his

trial work without a timely appeal having been filed, the defendant's challenge to the award of trial fees comes too late for the district court to consider. *See, e.g., Morgan*, 757 F.2d at 794-95; *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) (finding that issue of attorney's fees not before the court where no timely appeal had been filed).

## D. Mr. Manville's Appellate Fees

### 1. Application of the PLRA

Mr. Manville was awarded $25,754.54 in fees and costs by the district court for the appellate work he did for the plaintiff. The district court agreed with the magistrate judge's reasoning that Mr. Manville was entitled to this amount of fees because he was not allowed to withdraw from the case until the matter was remanded from the Sixth Circuit. The district court also found that when a verdict has been rendered in favor of a prisoner-plaintiff, the plaintiff has proven an actual violation of his rights. "An appeal by a losing defendant and a plaintiff's defense of the appeal cannot be considered an action where a plaintiff must again 'prove' that a violation of his rights has occurred since on appeal the standard of review based on a finding by the trier of fact is a higher standard." *Riley v. Kurtz*, No. 94-CV-71263-DT, slip op. at 5, (E.D. Mich. Mar. 29, 2002). The court then pointed out that if Congress intended its legislation to change the § 1988 standards for awarding attorney's fees, it could have made that intent specific in the statute.

The defendant contends that the district court erred in not applying the fee limitation provisions of the PLRA to Mr. Manville's request for appellate attorney's fees. Relying on the language of the statute that prohibits an award of fees except under specific conditions and concluding that there is no exception for fees earned defending an award of damages, the defendant contends that no fees for appellate work may be awarded. In any event, the defendant argues that the PLRA's

fee cap applies to all work performed in a case, whether at trial, post-trial, or on appeal, so even if Mr. Manville was entitled to appellate fees, they should have been considered as part of Mr. Manville's overall fee award that is limited to 150 percent of the monetary judgment, or $1,504.50.

In response, Mr. Manville argues that the PLRA does not limit his appellate fee request because the PLRA does not apply to appeals filed by the defendant. He submits that an appeal filed by a defendant is not an "action brought by a prisoner," that the limitations on attorney's fees do not apply in this circumstance, and that he is entitled to the full amount of his requested appellate fees.

Since both parties insist that the statutory language supports their respective positions, the obvious place to begin our analysis is the language of the statute itself. *Walker v. Bain*, 257 F.3d 660, 666 (6th Cir. 2001), *cert. denied*, 535 U.S. 1095 (2002). The particular statutory language at issue as well as the statute's design as a whole must be considered. *Id.* at 666-67. Statutes are to be read with "an eye to their straightforward and commonsense meanings." *Id.* at 666 (quoting *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000)). "Every word in the statute is presumed to have meaning, and we must give effect to all the words to avoid an interpretation which would render words superfluous or redundant." *Id.* at 667. We may not rely on the literal language of the statute if "absurd results or an interpretation which is inconsistent with the intent of Congress" would be the outcome. *Id.*

We start with Mr. Manville's argument because he focuses on the opening phrase of the statute: "In any action brought by a prisoner . . . ." There is no dispute that this litigation began with a case filed by Jimmy Lee Riley, a prisoner. The issue, then, is whether the appeal filed by the defendant is part of the original action, or if, as argued by Mr. Manville, it is a completely separate action. The term "action" is not defined in the statute, but Black's Law Dictionary defines it as "any

judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." *Black's Law Dictionary* 29 (7th ed. 1999). There appears to be no reason why an appeal brought by the losing party should be considered anything other than a continuation of the original action. There is no final judgment or decree until the appeals process has ended. Therefore, we reject Mr. Manville's first argument and find that an appeal filed by the defendant is part of the original action.

Moving on to the next part of the statute, we examine the issue of whether attorney's fees are authorized under § 1988. As stated above, parties qualify for attorney's fees under § 1988 of title 42, United States Code, if they are prevailing parties. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Although the plaintiff's award of damages was limited by this court, he succeeded on three of his four claims. The fact that his success was nominal on these claims does not change his prevailing party status. *Id.* at 114.

The defendant contends, however, that it was the intent of Congress to limit the definition of prevailing party for attorney's fees purposes. In a February 6, 1995, report issued by the House Committee on the Judiciary, the following statements were made concerning the attorney's fees section of the Act:

This subsection permits prisoners challenging prison conditions under 42 U.S.C. § 1983 to receive attorney fees but reasonably limits the circumstances under which fees may be granted as well as the amount of the fees.

This subsection limits awards of attorney fees in two ways. First, it narrows the judicially-created view of a "prevailing party" so that a prisoner's attorney will be

reimbursed only for those fees reasonably and directly incurred in proving an actual violation of a federal right. Narrowing the definition of "prevailing party" will eliminate both attorney fees that penalize voluntary improvements in prison conditions and attorney fees incurred in litigating unsuccessful claims, regardless of whether they are related to meritorious claims. While this provision eliminates the financial incentive for prisoners to include numerous non-meritorious claims in sweeping institutional litigation, it retains the financial incentive to bring lawsuits properly focused on prison conditions that actually violate federal law.

Second, this provision has the effect of reducing attorney fee awards by eliminating fees for litigation other than that necessary to prove a violation of a federal right. This eliminates the financial incentive for attorneys to litigate ancillary matters, such as attorney fee petitions, and to seek extensive hearings on remedial schemes.

Finally, this provision establishes a proportionality requirement for attorney fee awards. Under current law, the courts retain the discretion to award attorney fees that greatly exceed the extent of the relief obtained by the plaintiff prisoners. This proportionality requirement will discourage burdensome litigation of insubstantial claims where the prisoner can establish a technical violation of a federal right but he suffered no real harm from the violation. The proportionality requirement appropriately reminds courts that the size of the attorney fee award must not unreasonably exceed the damages awarded for the proven violation.

H.R. Rep. No. 104-21, at 28 (1995), *reprinted in* 1 Bernard D. Reams, Jr. & William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134 Stat. 1321* (1997).

Thus, it appears that the defendant is correct in his assertion that with this legislation Congress intended to limit the definition of prevailing party. A prisoner may only qualify for attorney's fees under the PLRA if the fees were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and if the fee is proportional to the amount of damages awarded for the violation. 42 U.S.C. § 1997e(d)(1)(A) and (B).

The defendant's position is that defending a judgment on appeal is not directly proving a violation, so the plaintiff is not entitled to any fees for appellate work. Whether the defense of a favorable judgment is part of directly proving an actual violation of the prisoner's rights is an issue of first impression in this circuit.[2] Nonetheless, a survey of the case law surrounding the award of attorney's fees under § 1988 for appellate work is instructive.

Shortly after the enactment of § 1988, the courts interpreted its provisions as including awards for fees earned for the successful defense of a judgment on appeal. *See, e.g., Hutto v. Finney*, 437 U.S. 678, 693-98 (1979) (affirming award of appellate fees to prevailing party as part of the costs); *Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir. 1979) (stating that fees for defending a judgment supported by Congressional purpose of the Act); *see also Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 351 (6th Cir. 2000) (awarding reasonable appellate fees to prevailing party under Title VII). There is no language in the PLRA that contradicts

---

[2]The court notes that the Ninth Circuit has considered this issue when interpreting the enforcement part of the PLRA's fee limitations. *Webb v. Ada County*, 285 F.3d 829, 834-35 (9th Cir. 2002). In *Webb*, the issue was whether the attorneys' post-judgment work related to enforcing a consent decree was work proving an actual violation. *Id.* The Ninth Circuit held that § 1997e(d)(1)(b)(ii) only requires that fees be directly and reasonably incurred in enforcing the relief ordered for the violation, and allowed compensation for post-judgment work. *Id.*

the traditional view that reasonable appellate fees may be awarded to prevailing parties.

We are to presume that when Congress passes legislation, it is fully aware of the existing law. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local 737 v. Auto Glass Employees Fed. Credit Union*, 72 F.3d 1243, 1248 (6th Cir. 1996) ("It is a settled principle of statutory construction that when Congress drafts a statute, courts presume that it does so with full knowledge of the existing law."). Thus, the presumption is that Congress was aware when passing the PLRA that, under § 1988, fees are awarded to prevailing parties for work done by attorneys at trial, post-trial, and on appeal.

These attorney's fee awards, however, are limited by the results obtained by the plaintiff. The Supreme Court has held that plaintiffs should receive attorney's fees for work "expended in pursuit of the ultimate result achieved" and not for work on claims unrelated to successful claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (citation omitted). In this circuit, work on claims unrelated to the claims upon which the plaintiff prevailed should not be compensated. *See Kelley v. Metro. County Bd. of Educ.*, 773 F.2d 677, 684-85 (6th Cir. 1985) (denying a request for attorney's fees for work on an unrelated matter); *see also Jenkins v. Missouri*, 127 F.3d 709, 717 (8th Cir. 1997) (*en banc*) (stating the question as whether the issues in the post-judgment litigation are inextricably intertwined with those upon which the plaintiff prevailed in the underlying suit).

However, an appeal by a defendant challenging a prisoner's success at trial is litigation related to the underlying suit, and attorney's fees would be allowed under § 1988 and *Hensley*. To this court's mind, the "related claim" limitation set out in *Hensley* has been incorporated into the fee limitation section of the PLRA. Although stated differently, this limitation on attorney's fees is like the limitation in the PLRA – attorney's fees are only available if "the fee was directly and reasonably

incurred in proving an actual violation of the plaintiff's rights . . . ." 42 U.S.C. § 1997e(d)(1)(A).

The only similar case that has come to our attention is a district court decision from the Eastern District of Michigan. *Sallier v. Scott*, 151 F. Supp. 2d 836 (E.D. Mich. 2001). In *Sallier*, the issue was whether the post-judgment work done by the prisoner's attorney included "proving" a violation. *Id.* at 838. Based on the definition of "prove" in *Black's Law Dictionary* (to establish or make certain), the district court found that "hours spent defending the jury award, against the defendants' motion for judgment as a matter of law, may also be considered hours spent to 'make certain' the verdict." *Id.* at 839.

We reject the defendant's argument that attorney's fees for defending a judgment on appeal are not available under the PLRA. We hold that a prisoner who prevails on appeal is entitled to attorney's fees under the PLRA because the hours were part of proving or making certain an actual violation of the prisoner's rights. After all, if the prisoner's favorable verdict is being challenged on appeal, he is having to prove or establish his violation again, this time to a higher court.

### 2. *Violation of the Equal Protection Clause*

Next, Mr. Manville contends that if the PLRA is applied to his request for appellate fees, then the Equal Protection Clause of the Fifth Amendment is violated. He concedes that he must show that an application of the PLRA's fee limitations to appellate fees is not "rationally related to any conceivable legitimate legislative purpose." *See Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).

Under this standard the statute will be afforded a strong presumption of validity and must be upheld as long as "there is a rational relationship between the disparity of treatment and some legitimate government purpose." The government has no obligation to produce evidence

to support the rationality of its statutory classifications and may rely entirely on rational speculation unsupported by any evidence or empirical data. The legislature is not even required to articulate any purpose or rationale in support of its legislation. Consequently, plaintiffs bear the heavy burden of "negativ[ing] every conceivable basis which might support [the legislation], . . . whether or not the basis has a foundation in the record."

*Id.* (citations omitted).

One of Congress' purposes in passing the PLRA was to reduce the large number of frivolous prisoner lawsuits being filed in federal courts. *See id.* at 844 (citing to 141 Cong. Rec. S7498-01 (daily ed. May 25, 1995) (statement of Sen. Dole)). The fee cap provisions are directly related to this purpose. Mr. Manville argues, however, that once a prisoner has prevailed at the trial level, the claims can no longer be considered frivolous. Applying the fee caps to his appellate work under these circumstances, he contends, would be an equal protection violation. In response, the defendant argues that our decisions in *Walker v. Bain*, 257 F.3d 660 (6th Cir. 2001), and *Hadix v. Johnson*, 230 F.3d 840 (6th Cir. 2000), are dispositive of this issue. We agree with the defendant.

We found in *Walker* and *Hadix* that it is rational to speculate that narrowing the definition of a prevailing party and building in a proportionality requirement (150% of the monetary judgment) could reduce the incentive of prisoners and their attorneys to file frivolous claims. As we discussed in *Hadix*, the fee cap could "counter-balance" a prisoner's numerous incentives to litigate and place prisoners and non-prisoners in a similar decision-making position. *Hadix*, 230 F.3d at 845. Just as a non-prisoner civil rights litigant should consider all the costs of bringing the action, including appellate costs, so should a prisoner litigant. Furthermore, as we discussed in both *Walker* and *Hadix*, the fee cap provisions are rationally related to protecting the federal and

state treasuries. *Walker*, 257 F.3d at 669; *Hadix*, 230 F.3d at 845.

As we noted in *Walker*, "the twin goals of decreasing marginal lawsuits and protecting the public fisc are legitimate government interests, and . . . decreasing an attorney fee award in the context of prisoner civil rights litigation serves both of these interests." *Walker*, 257 F.3d at 669 (citing *Hadix*, 230 F.3d at 845). These goals apply equally to trial and appellate work. Thus, Mr. Manville has failed to negate every conceivable basis which might support the legislation, and his constitutional argument fails.

Finally, Mr. Manville argues that it would be unfair to deny him his full attorney's fees for his appellate work on behalf of the prisoner. He asserts that if the fee limitation provision applies to defending a judgment, a losing defendant prison official would have little incentive to accept an unfavorable judgment and considerable incentive to cause the attorney to generate billable hours for which he or she might not be compensated. Having to defend a successful judgment below without additional compensation, however, is no different a situation than is faced by every plaintiff's lawyer working on a fixed contingency fee. The possibility of having to defend a favorable judgment on appeal is just another factor a prisoner's lawyer has to take into account in deciding whether to take the prisoner's case in the first place. While the court appreciates the dilemma Mr. Manville found himself in when he was denied permission to withdraw, we conclude that the PLRA applies to all the attorney's fees generated by a prevailing prisoner – trial, post-trial, and on appeal.

Upon accepting his remittitur, the plaintiff's monetary judgment was $1,003. Applying the 150 percent cap to this amount, the defendant is liable for attorney's fees in the amount of $1,504.50. However, under the unique facts of this case, Mr. Manville will receive $32,097.80 in attorney's fees for his trial work on this case, an amount well in excess of the 150 percent allowed by the PLRA. We conclude that the

$1,504.50 allowed under the PLRA is included in the award of trial fees, leaving no room for any further award for Mr. Manville's appellate work.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court awarding Mr. Manville his trial fees and **REVERSE** the judgment of the district court as to Mr. Manville's appellate fees.