**Glenndol Frank PARKER, Appellant**

**v.**

**Co CONWAY**

**Glenndol Frank Parker**

**v.**

**Co Conway**

**Joseph Conway, Appellant.**

Nos. 08–2764, 08–2900.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) May 28, 2009.

Filed Sept. 17, 2009.

Alexander Bilus, Stephen D. Brown, Joshua G. Schiller, Kenneth L. Topping, Dechert, Philadelphia, PA, for Appellant/Cross–Appellee.

Kevin R. Bradford, Claudia M. Tesoro, Office of Attorney General of Pennsylvania, Philadelphia, PA, John G. Knorr III, Office of Attorney General of Pennsylvania, Harrisburg, PA, for Appellee/Cross–Appellant.

Before: FISHER, CHAGARES, and COWEN, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, imposes quantitative limits on the amount of attorney's fees a court may award a plaintiff who prevails in a civil rights action that he filed while incarcerated. *See* § 1997e(d)(2)-(3) ("PLRA fee caps" or "fee caps"). The PLRA does not, however, impose similar limits on the amount of attorney's fees a court may award such a plaintiff who filed suit while not incarcerated. This case requires us to determine whether the PLRA fee caps unconstitutionally deny prisoners equal protection of the law, and, if they do not, to review the District Court's application of the fee caps.

The District Court held that the PLRA fee caps are constitutional. We will affirm the District Court's judgment, including its application of the fee caps.

I.

While Glenndol Parker was a prisoner in the Pennsylvania correctional facility at which Joseph Conway was a guard, Parker filed a lawsuit against Conway, pursuant to 42 U.S.C. § 1983, alleging that Conway assaulted him in violation of the Eighth Amendment. The District Court appointed counsel to represent Parker. The case proceeded to trial,[1] and a jury found for Parker, awarding him $17,500 in total damages. Parker then filed a motion for attorney's fees, seeking a total of $64,089.

Parker recognized that his motion implicated the PLRA, which provides, in relevant part:

(d) Attorney's fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized [by virtue of the plaintiff's having prevailed in a § 1983 action], such fees shall not be awarded, except to the extent that—

---

1. Upon the parties' consent, the District Court referred the case to a United States Magistrate Judge for trial and post-trial purposes pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. We refer to the Magistrate Judge as the "District Court" throughout this opinion.

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded . . .; and

(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation. . . .

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant. (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

§ 1997e(d).

Parker argued to the District Court that the PLRA fee caps unconstitutionally discriminate against successful prisoner litigants because 42 U.S.C. § 1988(b), which governs an attorney's fee award made to a prevailing civil rights plaintiff who was not incarcerated at the time he filed suit, requires only that the award be "reasonable." Therefore, Parker contended, the court should not use the fee caps to compute his attorney's fee award. Conway disagreed. Conway also argued that the provision requiring a court to apply "a portion of the judgment (not to exceed 25 percent)" to satisfy the attorney's fee award compels the court to apply the full 25 percent whenever the attorney's fee award is greater than 25 percent of the judgment, as it is in this case.

The District Court rejected Parker's constitutional argument, applied the fee caps, and awarded him $26,250, an amount equal to § 1997e(d)(2)'s limit of 150 percent of the total judgment (rather than the $64,089 he requested). Appendix ("App.") 1 & n.1. The District Court also rejected Conway's construction of the statute and applied approximately 18 percent of Parker's total judgment to satisfy the attorney's fee award (rather than the 25 percent Conway requested). App. 2. Parker appealed, and Conway cross-appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction over both Parker's appeal and Conway's cross-appeal pursuant to 28 U.S.C. §§ 636(c)(3), 1291.

■ We engage in plenary review of the District Court's ruling on the constitutionality of a federal statute. *Abdul–Akbar v. McKelvie,* 239 F.3d 307, 311 (3d Cir.2001) (en banc) (citing *DeSousa v. Reno,* 190 F.3d 175, 180 (3d Cir.1999)). We also engage in plenary review of the District Court's legal interpretation of such a statute. *Id.* (citing *Pa. Mines Corp. v. Holland,* 197 F.3d 114, 119 n. 2 (3d Cir.1999)).

## III.

Subsection (d)(2) of the PLRA limits a prevailing prisoner-plaintiff's attorney's fee award to 150 percent of the judgment, and subsection (d)(3) independently limits the attorney's fee award to 150 percent of the lodestar amount (hours worked multiplied by hourly rate) with an hourly rate equal to the hourly rate the Criminal Justice Act ("CJA") authorizes for court-appointed criminal defense attorneys. Further, subsection (d)(2) also requires the court to apply some portion of the judgment "not to exceed 25 percent" to satisfy the attorney's fee award.

Parker's appeal is an equal protection challenge to the PLRA fee caps. He asserts that Congress's decision to impose these numerical caps on the attorney's fees that a court may award a successful civil rights plaintiff who filed suit while incarcerated—but not on the attorney's fees that a court may award such a plaintiff who filed suit while not incarcerated—denies prisoners equal protection of the law.[2]

### A.

■■■ Parker concedes that his equal protection challenge to the PLRA fee caps implicates rational basis review. *See, e.g.,* Parker Br. 13. "[R]ational basis review requires merely that the [statute] be rationally related to a legitimate government objective." *Tenafly Eruv Ass'n v. Borough of Tenafly,* 309 F.3d 144, 165 n. 24 (3d Cir.2002). The Supreme Court has explained just how much freedom a legislature has in enacting a statute to which rational basis review applies:

> The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications will be set aside only if no grounds can be conceived to justify

them. With this much discretion, a legislature traditionally has been allowed to take reform "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind," and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.

*McDonald v. Bd. of Election Comm'rs,* 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) (quoting *Williamson v. Lee Optical of Okla., Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)) (internal citations omitted). Under rational basis review, Congress's judgment "is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Further, rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* at 313, 113 S.Ct. 2096.

Parker argues that Congress's prisoner versus non-prisoner classification does not rationally relate to any legitimate government objective.

### B.

■■■ Parker's is not the first equal protection challenge to the PLRA fee caps to come before us. In *Collins v. Montgomery County Board of Prison Inspectors,*

---

**2.** We need not decide whether the equal protection guarantee relevant to this case is found in the Fifth Amendment's Due Process Clause or the Fourteenth Amendment's Equal Protection Clause. *Compare Jackson v. State Bd. of Pardons and Paroles,* 331 F.3d 790, 792 & n. 1 (11th Cir.2003) (framing equal protection challenge to PLRA fee caps as Fifth Amendment issue on ground that PLRA is federal law) *with Johnson v. Daley,* 339 F.3d

582, 585 (7th Cir.2003) (en banc) (framing equal protection challenge to PLRA fee caps as Fourteenth Amendment issue on ground that PLRA was enacted pursuant to § 5 of the Fourteenth Amendment). The same framework applies to an equal protection challenge brought under either amendment. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 217, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995).

176 F.3d 679 (3d Cir.1999) (en banc), this Court, sitting en banc, divided equally over whether the fee cap limiting an attorney's fee award to 150 percent of the judgment irrationally discriminates against prisoners, and we did not reach the merits of the equal protection challenge to the other limiting provisions. *Id.* at 686.[3]

Every other court of appeals to address challenges to any or all of the PLRA fee caps in a precedential opinion, however, has rejected the challenges. *See, e.g., Royal v. Kautzky,* 375 F.3d 720, 725–26 (8th Cir.2004); *Riley v. Kurtz,* 361 F.3d 906, 917 (6th Cir.2004); *Johnson v. Daley,* 339 F.3d 582, 598 (7th Cir.2003) (en banc); *Jackson v. State Bd. of Pardons and Paroles,* 331 F.3d 790, 797–98 (11th Cir.2003); *Robinson v. Hager,* 292 F.3d 560, 563 n. 2 (8th Cir.2002); *Foulk v. Charrier,* 262 F.3d 687, 704 (8th Cir.2001); *Walker v. Bain,* 257 F.3d 660, 669–70 (6th Cir.2001); *Hadix v. Johnson,* 230 F.3d 840, 846 (6th Cir.2000); *Boivin v. Black,* 225 F.3d 36, 46 (1st Cir.2000); *Madrid v. Gomez,* 190 F.3d 990, 996 (9th Cir.1999). We join them. This litany of court of appeals precedent offers multiple legitimate government objectives on which we could focus. One such government objective will suffice, however. *See McDonald,* 394 U.S. at 809, 89 S.Ct. 1404.

Congress could have legitimately intended to reduce the variability in attorney's fee awards. *Johnson,* 339 F.3d at 593–94. Congress could have rationally believed that reasonableness, § 1997e(d)(1)(A), and proportionality, § 1997e(d)(1)(B)(i), are qualitative standards that may vary from district court to district court. *See id.* at 593. Use of these qualitative standards alone therefore "ensures inconsistency."

*Id.* A numerical cap is not susceptible to as much interpretive variation as these qualitative standards are. Thus, "Congress rationally could conclude—on the ground of equitable treatment alone—that a quantitative rule ... should supplement a qualitative one...." *Id.* at 594. Further, it is not constitutionally problematic that Congress decided, in enacting the PLRA fee caps, to address the issue of uniformity of attorney's fee awards with respect to prevailing prisoner-plaintiffs only. *Id.* at 596 ("The ability to take one step at a time, to alter the rules for one subset (to see what happens) without changing the rules for everyone, is one of the most important legislative powers protected by the rational-basis standard.").

We note that the PLRA fee caps rationally relate to other legitimate government objectives, as well. For example, the PLRA fee caps rationally relate to the legitimate goal of reducing (in addition to uniformizing) attorney's fee awards. *See id.* Congress could have rationally believed that attorney's fee awards in general are too high. *Id.* (citing *City of Riverside v. Rivera,* 477 U.S. 561, 573–81, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion) (affirming award of approximately $245,000 for legal work that resulted in $33,350 in damages)). The fee caps tend to reduce those fee awards. Again, it is not constitutionally problematic that Congress chose to single out prisoners in attempting to further this legitimate government objective. *See id.*

In addition, the fee caps rationally relate to the legitimate government objective of deterring frivolous lawsuits and deterring lawsuits that, while not technically frivolous, generate litigation costs that exceed

---

**3.** The Supreme Court, in a decision issued shortly after *Collins,* considered subsection (d)(3)'s fee cap (albeit in a context other than an equal protection challenge), and no Justice expressed any doubts about its constitutionality. *See Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999).

any potential recovery. *See id.* at 593–95, 106 S.Ct. 2686; *Boivin,* 225 F.3d at 45; *Madrid,* 190 F.3d at 996. Congress could have rationally believed that prisoners have less of an incentive than non-prisoners to refrain from filing insubstantial lawsuits, given, for example, that prisoners may receive free of charge office supplies and legal materials that non-prisoners would not. *See Johnson,* 339 F.3d at 592–93; *see also Boivin,* 225 F.3d at 44. As other courts have noted, capping the amount of attorney's fees a court may award to a prevailing prisoner plaintiff may cause a prisoner to evaluate more carefully the merit of the action he intends to file, therefore reducing the likelihood he would file an insubstantial lawsuit, because it reduces the chance the prisoner will find an attorney to take his case (and because he believes the chances of winning are lower without a lawyer than with one). *See, e.g., Walker,* 257 F.3d at 669; *Boivin,* 225 F.3d at 45.

■ The PLRA fee caps rationally relate to the legitimate government objective of achieving uniformity in attorney's fee awards, as well as multiple other legitimate government objectives. Parker's equal protection challenge therefore fails.[4]

## IV.

■ Conway's cross-appeal challenges the District Court's interpretation of the part of subsection (d)(2) providing that "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." § 1997e(d)(2). Specifically, Conway argues that this provision requires the court to satisfy the entire attorney's fee award via proceeds from the judgment when the attorney's fee award is less than or equal to 25 percent of the judgment, and to apply the full 25 percent of the judgment to the award whenever (as in this case) the attorney's fee award exceeds that amount.

As the Supreme Court has held, a court must "begin by looking at the language of the [statute].... When [the court] find[s] the terms of a statute unambiguous, judicial inquiry is complete, except 'in rare and exceptional circumstances.'" *Rubin v. United States,* 449 U.S. 424, 429–30, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (quoting *TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). The plain language of the 25–percent provision is unambiguous and does not support Conway's reading. The statute does not compel district courts to apply 25 percent of the judgment to pay attorney's fees when

---

4. Parker's argument that the fee caps might not rationally relate to a legitimate government objective *in this very case, see* Parker Br. 38–41, is beside the point. "Under the rational-basis test, a court must uphold legislation 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification[,]'" even if the instant case does not present that state of facts. *Madrid,* 190 F.3d at 996 n. 8 (quoting *Beach Commc'ns,* 508 U.S. at 313, 113 S.Ct. 2096) (holding that even though suit underlying instant equal protection challenge was not frivolous, that fee cap furthered goal of deterring frivolous suits sufficed to defeat equal protection challenge).

Parker's reliance on *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) and *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972) is misplaced, as well. *See Johnson,* 339 F.3d at 597–98 (holding that *Rinaldi* and *Lindsey* did not preclude PLRA fee caps from passing rational basis review). As the en banc Court of Appeals for the Seventh Circuit explained, these cases invalidated statutes that amounted to "litigation tax[es]" imposed on certain groups and not others. *See id.* at 598. But they cast no constitutional doubt upon the PLRA, because the PLRA "does not impose a 'litigation tax' on prisoners but simply reduces the extent to which defendants must underwrite prisoners' suits." *Id.*

the attorney's fee award exceeds that amount.

We have not squarely ruled upon this issue before,[5] but the Court of Appeals for the Eighth Circuit has. In *Boesing v. Hunter*, 540 F.3d 886 (8th Cir.2008), it held:

> The PLRA states that the district court "shall" apply a portion of the judgment "not to exceed 25 percent." The term "shall" indicates that the district court must apply some percentage of the judgment to pay attorney's fees, and the phrase "not to exceed 25 percent" clearly imposes a maximum, not a mandatory, percentage. This statute is not ambiguous. We hold that the plain language of 42 U.S.C. § 1997e(d)(2) does not require the district court to automatically apply 25 percent of the judgment to pay attorney's fees [when the fee award exceeds 25 percent of the judgment]. Instead, the PLRA gives the district court discretion to apply a lower percentage.

*Id.* at 892 (citations omitted) (affirming district court's application of less than 25 percent of judgment to satisfy attorney's fee award, even though attorney's fee award exceeded 25 percent of judgment); *see also ITT–Indus. Credit Co. v. Hughes*, 594 F.2d 384, 387 (4th Cir.1979) (explaining that contractual language providing for payment of attorney's fees " 'not to exceed' 15%" of a particular sum "clearly contemplate[s]" payment of attorney's fees in "an amount less than 15%" of that sum). We agree with the *Boesing* court's holding.[6]

■ The PLRA's 25–percent provision does not require a district court to apply 25 percent of the judgment to satisfy an attorney's fee award when the attorney's fee award exceeds 25 percent of the judgment. Accordingly, a district court may apply less than 25 percent of the judgment (as long as it applies *some* portion of the judgment) to satisfy the attorney's fee award.[7] Therefore, Conway's statutory interpretation argument fails.

5. Though in *Collins*, we did note, with no disapproval, the district court's application of less than 25 percent of the judgment to an attorney's fee award that exceeded that amount. 176 F.3d at 682.

6. The Court of Appeals for the Eighth Circuit's later opinion in *Kahle v. Leonard*, 563 F.3d 736 (8th Cir.2009), does not call *Boesing* into question. In *Kahle*, the district court declined to satisfy the entire attorney's fee award via proceeds from the judgment, despite the fact that the attorney's fee award was less than 25 percent of the judgment. 563 F.3d at 742. The court of appeals vacated and remanded to the district court to reconsider that percentage. *Id.* at 743. The court of appeals did this not because it held that the district court was compelled by the 25–percent provision to satisfy the entire attorney's fee award using proceeds from the judgment, but because it held that the district court failed to consider circuit precedent instructing district courts to apply a multi-factor test to attorney's fee awards. Indeed, only one judge expressed the view that the 25–

percent provision compelled the district court to satisfy the entire attorney's fee award using the judgment. *See id.* (Loken, C.J., concurring). That view was not adopted by the majority of the court.

7. The statements to the contrary in *Riley*, 361 F.3d at 911; *Johnson*, 339 F.3d at 585; and *Walker*, 257 F.3d at 669, are all dicta. The *Walker* court never had to review the application of the 25–percent provision, because the district court held that subsection (d)(2) was unconstitutional and therefore never applied it in the first place. 257 F.3d at 663. The district court whose decision was under review in *Johnson* did apply the 25–percent provision, but that portion of the district court's order was not appealed. 339 F.3d at 585. And the *Riley* court never had to review the application of the 25–percent provision because the district court (on non-constitutional grounds) declined to apply the PLRA. 361 F.3d at 912–13. Further, the only authority the *Riley* court cited to support its departure from the statute's plain text is the dicta in *Walker* and *Johnson*. 361 F.3d at 911

## V.

For the above reasons, we will affirm the District Court's judgment in all respects.

(citing *Johnson*, 339 F.3d at 585; *Walker*, 257 F.3d at 667). Finally, these out-of-circuit decisions, dicta or not, do not bind us and we decline to follow them to the extent that they conflict with subsection (d)(2)'s plain text.