**Aaron D. JOHNSON, Plaintiff,**

v.

**T.M. HORNUNG, et al., Defendants.**

**No. 02 CV 0729–LAB(JFS).**

United States District Court,
S.D. California.

Feb. 17, 2005.

City's Motion to Dismiss.

Aaron D. Johnson, Imperial, CA, Plaintiff, in pro per.

Randall A. Pinal, Deputy Attorney General, Office of the California Attorney General, San Diego, CA, for Defendants.

## ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION, AND GRANTING DEFENDANT INNISS' MOTION FOR SUMMARY JUDGMENT

BURNS, District Judge.

Plaintiff *in pro per*, Aaron D. Johnson, a state inmate at Centinela State Prison, filed a complaint for violation of civil rights pursuant to Title 42 United States Code Section 1983. Plaintiff alleges he was deprived of his constitutional right of access to the courts when, instead of mailing his legal mail, Defendant Inniss ("Defendant") threw it in the trash. The case was referred to Magistrate Judge James F. Stiven for a report and recommendation in accordance with 28 United States Code Section 636(b)(1)(B) and Civil Local Rule 72.3.

Defendant filed a motion for summary judgment claiming that he was protected by qualified immunity and that there was no genuine issue of material fact with respect to Plaintiff's claim. Plaintiff filed an opposition and Defendant replied. Judge Stiven issued a report and recommendation recommending that the motion be granted ("R & R").

Plaintiff objected to the report and recommendation, and Defendant replied. Upon review of Plaintiff's objections, Defendant's reply and the underlying motion papers, the Court overrules Plaintiff's objections, **ADOPTS IN PART AND REJECTS IN PART** the report and recommendation, and **GRANTS** Defendant's motion for summary judgment.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff claims that he handed his legal mail to Defendant for processing according to the operational procedures at the Donovan Correctional Facility, where he was incarcerated at the time of the incident. The legal mail contained Plaintiff's petition for a writ of certiorari to the United States Supreme Court, appealing the denial of his habeas corpus petition.

The morning after handing his legal mail to Defendant, inmate mail was found in the trash. Plaintiff infers that Defendant put it there because he claims that Defendant was responsible for the processing of his mail, and because he contends he had a problematic relationship with Defendant prior to the incident. Defendant denies that he was responsible for the ultimate processing Plaintiff's mail and denies that he threw it in the trash.

Plaintiff contends that as a result of Defendant's actions, the Supreme Court did not receive his filing. He explained his situation to the Supreme Court clerk when he subsequently resubmitted his petition for a writ of certiorari. Although his second filing was rejected for failure to include an appendix and a proof of service, he was given an extension of time to comply. Plaintiff was unable to assemble an appendix, and claims that Defendant's conduct with respect to his initial petition precluded him from presenting his subsequent petition to the Supreme Court for consideration on the merits. Defendant contends that even if he threw Plaintiff's mail in the trash, he did not cause Plaintiff any actual injury because Plaintiff's writ was not heard by the Supreme Court for procedural reasons unrelated to the processing of Plaintiff's mail at Donovan.

Upon review of the motion papers, Judge Stiven concluded that (1) "even if the Court interprets the evidence presented by Defendant in support of the summary judgment motion in the light most favorable to the Plaintiff, [there was] no evidence of any action by Defendant that would constitute more than mere negligence" (R & R at 6); "Plaintiff did not suffer any harm even if Defendant had

intentionally thrown away his mail" (*id.* at 10); and (3) the question of qualified immunity was moot because Plaintiff could not make out a constitutional violation (*id.* at 11).

Plaintiff makes three objections to the report and recommendation: (1) he contends he presented sufficient evidence to raise a genuine issue whether Defendant was responsible for the entire processing of his mail; (2) he maintains the undisputed evidence demonstrates he suffered an actual injury caused by Defendant; and (3) he argues Defendant is not entitled to qualified immunity.

## DISCUSSION

### I. Standard of Review

The district court has jurisdiction to review the magistrate judge's report and recommendation concerning a dispositive pretrial motion. Fed.R.Civ.P. 72(b). "The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." *Id.; see also* 28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Thus, the district court judge reviews those parts of the report and recommendation to which a party has filed a written objection. *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003)(*en banc*). As Plaintiff objected to all parts of the report and recommendation, the Court reviews Defendant's motion for summary judgment *de novo.*

### II. Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001).

Where the plaintiff bears the burden of proof at trial, summary judgment for the defendant is appropriate if the defendant shows that there is an absence of evidence to support the plaintiff's claims. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *see also Garneau v. City of Seattle,* 147 F.3d 802, 807 (9th Cir.1998). The movant has the initial burden of demonstrating that there is no issue of material fact and that summary judgment is proper. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Arpin,* 261 F.3d at 919. The movant is not required to produce evidence showing the absence of a genuine issue of material fact, nor is he or she required to offer evidence negating the non-movant's claims. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989).

If the movant met his or her burden, the burden then shifts to the non-movant to show that summary judgment is not appropriate. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The non-movant does not meet this burden by showing "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The "mere scintilla of evidence in support of the non-

moving party's position is not sufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials in his [or her] pleadings." *Id.* at 256, 106 S.Ct. 2505. The non-movant must go beyond the pleadings to designate specific facts showing that there are genuine factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

In considering the motion, the non-movant's evidence is to be believed and all justifiable inferences are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a motion for summary judgment. *Id.*

## III. *Constitutional Right of Access to the Courts*

■ Plaintiff contends that Defendant deprived him of his constitutional right of access to the courts. To prevail on this claim, Plaintiff must establish that official action actually frustrated or impeded a nonfrivolous attack on his sentence or conditions of confinement, thus causing actual injury. *See Lewis v. Casey*, 518 U.S. 343, 353, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *see also Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002).

■ Defendant contends that the doctrine of qualified immunity protects him from Plaintiff's claim. In *Saucier v. Katz*, the Supreme Court articulated the qualified immunity analysis for purposes of civil rights claims. In ruling on qualified immunity, the threshold question is:

Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? ... If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Summary judgment based on qualified immunity is appropriate "if the law did not put the officer on notice that his conduct would be clearly unlawful," even if material issues of fact remain with respect to the constitutional claim. *Id.* at 202, 121 S.Ct. 2151.

### A. Whether Defendant Actually Impeded or Frustrated Plaintiff's Access to the Courts

Plaintiff contends that his right was violated when he handed his legal mail to Defendant, but the mail was not sent, and was later found in the trash. Plaintiff testified that he handed his legal mail to Defendant. (Mem. of P. & A. in Supp. of Pl.'s Opp'n to Dismiss Def.'s Mot. for Summ. J. ("Pl.'s Mem."), filed 6/24/04, Ex. C & Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), filed 6/1/04, Ex. D ("Pl.'s Dep.") at 22, 70–71, 73.) Defendant inspected the mail, instructed Plaintiff to seal the envelope, signed the back, and then "placed it in the unit office, and I assume in the mail receptacle or mailbag after locking the housing unit." (Pl.'s Dep. at 22, 25.) Plaintiff saw Defendant take the mail to the unit office, put it on his desk, close the door, and then go lock up the housing unit; he did not see Defendant put the mail in the mailbox, which was mounted on the office wall. (*Id.* at 25–26,

28.) Plaintiff did not see Defendant handle his mail after placing it on his desk and shutting the door. (*Id.* at 28–29, 67–68.)

Plaintiff handed the mail to Defendant during third watch, and, in his experience, third watch officers pick up the mail. (Pl.'s Dep. at 30–31, 70–71.) According to Plaintiff, the practice is for third watch officers to retrieve the mail from the mailbox area at 10 p.m. and place it in the mailbag. (*Id.* at 31.) Plaintiff does not know if the procedure was for Defendant to give the mail to another officer for handling after he had inspected it. (*Id.* at 68, 69–70.)

Plaintiff relies on the Donovan Correctional Facility Operational Plan No. 26 regarding inmate mail. (Pl.'s Dep. at 70; Fourth Am. Compl., filed 9/3/03, Ex. E & Decl. of Pl. Aaron D. Johnson in Supp. of Mot. to Dismiss Def. Summ. J. ("Pl.'s Decl."), filed 6/24/04, Ex. F.) Plaintiff's mail was processed as confidential pursuant to the Operational Plan paragraph VI.F.:

1. Inmate wishing to post outgoing confidential mail shall do so by presenting the mail unsealed to designated staff. In the presence of an inmate, staff shall remove the contents of the envelope upside down and inspect for contraband....

3. If no prohibited material is discovered, the contents shall be returned to the envelope and in the presence of staff, sealed by an inmate. Staff shall sign the back of the envelope and deposit the confidential mail in the appropriate depository.

(*Id.* at 7–8.) Operational Plan paragraph VI.C. provides for further inmate mail processing, after the above steps for confidential mail are completed:

... At the beginning of First Watch (2200 hours), First Watch facility staff will remove the outgoing mail from the mail receptacle and transfer the mail to the Housing Unit control booths. The Control Booth Officers will then screen each nonconfidential letter for contraband ... [¶] ...

After the mail (nonconfidential) has been appropriately processed, the control officer will bundle confidential and nonconfidential mail into separate packages and pass both to the facility rover, who will then place them into mailbags. At this time the facility rover will transport the mailbags to the facility plaza gate, to be delivered to the Mail Room during First Watch by the Outside Patrol Sergeant....

(*Id.* at 3–4; *see also id.* ¶ VI.F. at 7.)

The morning after Plaintiff handed his mail to Defendant, an inmate yard crew worker found inmate mail in the trash outside the housing unit. (Pl.'s Dep. at 63, 65.) Plaintiff admitted that he did not know if Defendant put his mail in the trash and that he had no proof that Defendant intentionally failed to send out his mail. (*Id.* at 68, 120.) However, he claims that Defendant processed his mail with deliberate indifference and violated his right of access to the courts. (*Id.* at 119–20.)

Plaintiff in part infers that Defendant threw his mail in the trash because he claims they had a problematic relationship. Plaintiff had known Defendant for approximately five months before handing him his mail, and saw him five days per week. (Pl.'s Dep. at 73.) Plaintiff testified that he had "issues" with Defendant at times, but not all the time. (*Id.*) He specified that Defendant did not let him go to the law library and "they just thought I was ... a troublemaker ...." (*Id.*)

Plaintiff's evidence is insufficient to raise a genuine issue of material fact. A fact is material if it "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Whether Defendant threw Plaintiff's mail in the

trash is a material fact. A dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence, viewed in the light most favorable to Plaintiff, shows that after inspecting Plaintiff's mail, Defendant placed it on his desk rather than directly "in the appropriate depository," as provided by the Operational Plan. In his objections, Plaintiff included records of his complaints with respect to another instance of his legal mail allegedly not being received by the addressee court.[1] This additional evidence; however, is not relevant because it pertains to a subsequent incident not involving Defendant. Furthermore, it does not shed any additional light on the inmate legal mail processing procedures pertinent here. Whether the first watch was responsible for removing the outgoing mail, as provided in the Operational Plan and contended by Defendant, or whether Plaintiff's testimony is believed that the third watch was responsible, is irrelevant. It is undisputed that numerous officers are charged with handling confidential inmate mail after it is turned in and inspected. (*See id.* ¶ VI.C. at 3–4; ¶ VI.F. at 7.)

■ Viewed in the light most favorable to Plaintiff, the evidence in support of his contention that Defendant threw his mail in the trash is that Plaintiff handed the mail to Defendant, numerous officers were responsible for processing the mail after it was handed to Defendant, the mail was found in the trash the next day, and Plaintiff had had unrelated difficulties with Defendant prior to the incident. Although circumstantial evidence may be sufficient to raise a genuine issue of material fact, what is required is more substantial than a mere "scintilla of evidence" raising "some metaphysical doubt as to material facts."

*Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Plaintiff's evidence does not meet this standard.

■ Plaintiff also argues that Defendant's failure to immediately place his mail in the "appropriate depository" constituted deliberate indifference. In order to establish a constitutional violation in this context, plaintiff must establish more than mere negligence. *See Stevenson v. Koskey,* 877 F.2d 1435, 1439–41 (9th Cir.1989). However, Plaintiff's conclusory statement in his deposition is insufficient to meet his burden in opposing summary judgment:

> In ruling upon a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. . . . Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.

*Lujan,* 497 U.S. at 888, 110 S.Ct. 3177 (internal citation and related quotation marks omitted).

Rather than taking at face value Plaintiff's conclusory statement that Defendant acted with deliberate indifference, the Court must look at the underlying facts.

---

1. Defendant objects to this evidence on several grounds. The objection is sustained as discussed below.

Instead of placing Plaintiff's legal mail into the mail box immediately after inspecting it, Defendant put it on his desk, locked his office and proceeded to lock up the housing unit for the day. Plaintiff points to no other evidence showing that Defendant mishandled his mail with deliberate indifference. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable trier of fact would conclude that it shows Defendant was deliberately indifferent. The evidence may not even support a finding of negligence.

Accordingly, the Court finds that Plaintiff failed to raise a genuine issue whether Defendant actually impeded or frustrated Plaintiff's appeal from the denial of his habeas corpus petition, the first element of his constitutional claim. *See Lewis,* 518 U.S. at 353, 355, 116 S.Ct. 2174. Defendant's motion for summary judgment can be granted on this ground alone. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548 (if the non-movant fails to make a sufficient showing of an element of his or her case, the movant is entitled to a judgment as a matter of law).

**B. Whether Defendant Caused an Actual Injury**

In the alternative, the Court grants Defendant's summary judgment motion because Plaintiff failed to raise a genuine issue with respect to actual injury, the second element of his claim. *See Lewis,* 518 U.S. at 353, 355, 116 S.Ct. 2174. This is an independent ground for granting the motion. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

Plaintiff's legal mail at issue was his petition for a writ of certiorari to the United States Supreme Court. (Def.'s Mem. Ex. H.) When Plaintiff determined that his petition to the Supreme Court was not sent, he sent another petition with an explanation why it was late. (Pl.'s Dec. Ex. G, H & I; Pl.'s Dep. at 75, 78–79.) The

Supreme Court accepted Plaintiff's explanation why his petition was late. However, it rejected it because it did not include an appendix of the lower court record and lacked a proof of service. The Supreme Court granted Plaintiff 60 days in which to comply with these procedural requirements. (Pl.'s Decl. Ex. J; Pl.'s Dep. at 88.) Plaintiff contends that the appendix and proof of service were included in the initial petition which was not sent allegedly due to Defendant's misconduct. He admits, however, that his second petition to the Supreme Court did not include either. (Pl.'s Dep. at 90–92.) After receiving the extension of time from the Supreme Court, Plaintiff requested copies of the record from the lower courts; however, they did not respond to his request. (Pl.'s Dec. Ex. K, M & O; Pl.'s Dep. at 93, 99, 101, 111.) Plaintiff then requested the Supreme Court to accept his writ without the appendix. (Def.'s Mem. Ex. N; Pl.'s Dep. at 111–12.) This request was apparently denied.

█ Plaintiff contends that Defendant's actions in failing to properly process his legal mail containing the initial petition for a writ of certiorari, which included all the necessary attachments, caused him to fail to comply with the appendix requirement when he resubmitted his petition. Plaintiff's argument fails for two independent reasons. First, he points to no legally sufficient evidence to show that Defendant caused his failure to comply with the Supreme Court procedural requirements after he had obtained an extension of time. Second, he can not establish that his habeas corpus petition was not frivolous, as required by *Lewis.*

█ Common law of torts provides the causation element applicable to civil rights violations. *Stevenson,* 877 F.2d at 1438. "The requisite causal connection can be established not only by some kind of direct

personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 1438–89, quoting *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978). Defendant here did not directly participate in the lower courts' failure to respond to Plaintiff's requests for the record. Although Plaintiff contends that Defendants' initial failure to properly process his mail set into motion the events which resulted in him having to re-assemble the appendix, no evidence is presented that Defendant knew or reasonably should have known that Plaintiff would receive no response from the lower courts, and would thus be unable to comply with the Supreme Court procedural requirements. Viewing the evidence in the light most favorable to Plaintiff, the Court finds it insufficient to raise a genuine issue whether Defendant caused him an actual injury. This alone is a sufficient independent ground to grant Defendant's motion.

 In the alternative, the Court finds that Plaintiff cannot establish that his petition for review in the Supreme Court concerned a nonfrivolous attack on his sentence or conditions of confinement, thus causing actual injury. *Lewis,* 518 U.S. at 353, 355, 116 S.Ct. 2174; *see also Christopher,* 536 U.S. at 415, 122 S.Ct. 2179. The legal claim constituting the nonfrivolous attack on the plaintiff's sentence or conditions of confinement is an element of the access to the courts claim. *Christopher,* 536 U.S. at 415, 122 S.Ct. 2179.

The United States District Court for the Central District of California denied Plaintiff's writ for habeas corpus because it was a successive petition. (Def.'s Mem. Ex. A at 1, 6.) As discussed in the district court's order dismissing Plaintiffs petition, this was the fifth federal petition filed by Plain-

tiff in the same court. (*Id.* at 1.) Plaintiff's first and second petitions were dismissed for failure to exhaust state court remedies. (*Id.* at 2.) After exhausting his state court remedies, Plaintiff filed his third petition, which was dismissed as time barred. (*Id.* at 2, 3.) His fourth and fifth petitions were dismissed as successive petitions. (*Id.* at 2, 6.) Plaintiff appealed the dismissal of his fifth petition to the Ninth Circuit, which denied certificate of appealability, as well as Plaintiff's motion to reconsider. (Pl.'s Mem. Ex. A & B.) The attack on Plaintiff's sentence which was thwarted by the incident alleged in this action was Plaintiff's petition for a writ of certiorari to appeal the Ninth Circuit's denial of certificate of appealability. (Def.'s Mem. Ex. H.) "Depriving someone of a frivolous claim ... deprives him of nothing at all ...." *Lewis,* 518 U.S. at 353 n. 3, 116 S.Ct. 2174. Based on the evidence viewed in the light most favorable to Plaintiff, Plaintiff did not have an arguable, nonfrivolous claim to present to the Supreme Court. Accordingly, Defendant's motion for summary judgment is granted on the alternative ground that Plaintiff did not point to evidence necessary to raise a genuine issue whether he suffered an actual injury.

## C. Qualified Immunity

Having found that Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact with respect to his constitutional claim, the Court need not proceed to the second prong of the *Saucier* qualified immunity inquiry, whether the constitutional right was clearly established in the factual context presented by this case. *See Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. However, as an alternative ground for granting Defendant's motion for summary judgment, the Court finds, based on the legal authority discussed above, that a reasonable correctional officer would not have believed that he violat-

ed Plaintiff's constitutional rights in the circumstances presented in this case.

### D. Report and Recommendation

The Court in part adopts the report and recommendation because the recommendation to grant Defendant's motion for summary judgment is correct. However, the Court expressly rejects the report and recommendation to the extent the recommendation is based on credibility determinations and weighing of the evidence. (*See* R & R at 8, 9.) These are jury functions not appropriate for resolution by the court on a motion for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### CONCLUSION

For the reasons stated above, the Court overrules Plaintiff's objections, **ADOPTS IN PART AND REJECTS IN PART** the report and recommendation, and **GRANTS** Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

STIVEN, United States Magistrate Judge.

### I. INTRODUCTION

On April 16, 2002, Plaintiff brought the original lawsuit against the Defendants for violations of his civil rights under 42 U.S.C. § 1983, relating to an alleged denial of access to the courts. On May 3, 2002, the Court dismissed this case for a failure to state a claim upon which relief could be granted. On June 14, 2002, Plaintiff filed a First Amended Complaint, adding Defendants Robert J. Hernandez, D. Cornish, C. Inniss, Z. Beagl, and Garcia. Subsequently, Plaintiff moved to file a second amended complaint, which, on August 30, 2002, the Court granted, but also dismissed, *sua sponte*, for failure to state a

claim. Plaintiff filed a Third Amended Complaint on October 1, 2002. On December 12, 2002, the Court denied Plaintiff's motion for a temporary restraining order.

On February 5, 2003, Defendants moved to dismiss the Third Amended Complaint. On April 7, 2003, the Court granted Defendants' motion and dismissed the claims against Defendants Ramos, McGruer, Clarke, Mitchell, and Hernandez with prejudice. The claim against Defendant Inniss was also dismissed but without prejudice. On September 3, 2002, the Court ordered that Plaintiff's Fourth Amended Complaint be filed and denied Defendants' motion to dismiss the Fourth Amended Complaint, but granted the motion with respect to the damages sought against the remaining Defendants in their official capacities.

In the Fourth Amended Complaint, Plaintiff alleges that Defendant Inniss violated his First and Fourteenth Amendment rights by throwing away Plaintiff's petition for writ of certiorari to the U.S. Supreme Court (following the denial of a habeas petition by the Central District of California and the Ninth Circuit Court of Appeals) after Plaintiff gave the document to Defendant Inniss to mail from the prison.

On January 9, 2004, the Court issued a Report and Recommendation that Plaintiff's motion to file a fifth amended complaint be denied. The District Court affirmed the Report and Recommendation on June 23, 2004.

On June 1, 2004, the Defendants moved for summary judgment. Plaintiff filed his opposition on June 29, 2004. Defendants' reply was filed on July 7, 2004.

### II. BACKGROUND

Defendants moved for summary judgment on several grounds. First, Defendant argues that Plaintiff has presented no

evidence that Defendant Inniss intentionally, or with deliberate indifference, interfered with Plaintiff's mail, as he claims not to have done or directed anyone else to do so. Second, Defendant contends that even if he had thrown out Plaintiff's mail, Plaintiff suffered no harm because the U.S. Supreme Court denied Plaintiff's petition on grounds other than being untimely. Third, Defendant claims the qualified immunity privilege because there is no evidence that he acted other than according to the prison regulations in receiving mail from prisoners.

Plaintiff's cause of action arises from the alleged misconduct of Defendant Inniss wherein he is alleged to have violated Plaintiff's First and Fourteenth Amendment rights by throwing away Plaintiff's legal correspondence. He claims that Defendant's actions denied him due process of the law by preventing his access to the courts. Plaintiff has alleged that on the evening of May 13, 2001, he went to Defendant Inniss, who was on the third watch, to have him inspect his mail and send it out. The mail he intended to send was a petition for writ of certiorari to the United States Supreme Court for the denial of habeas relief at the Central District of California[1] and the Ninth Circuit Court of Appeals. Allegedly, the petition had attached to it Plaintiff's copies of the lower court opinions. Plaintiff alleges that Defendant Inniss received, inspected, and set aside his mail. Plaintiff left without seeing what was done with the mail as Defendant Inniss began to shut down that office for the evening.

The following morning, while Plaintiff was outside in the prison yard, he noticed that another inmate discovered a bag of trash that he says contained some prisoners' mail. That inmate took the bag to prison officials, who in turn examined the contents of the trash bag in an office. While it is unclear how, Plaintiff claims that he was informed that some of his mail was in that bag, but he never received the mail. Within a couple of days following the incident, he spoke with the prison litigation coordinator, who sent a letter with a letter from Plaintiff to the U.S. Supreme Court asking for an extension if necessary for any filing deadline because Plaintiff had lost mail through no fault of his own. Plaintiff then prepared the petition again and sent it off to the Supreme Court on June 26, 2001. This petition did not have the lower court opinions attached. A clerk at the Supreme Court rejected the petition for lacking copies of the lower court opinions and gave Plaintiff sixty days to cure this defect. Plaintiff wrote the district court and the Ninth Circuit, seeking additional copies of those courts' opinions, but those courts apparently never responded. The Supreme Court, thus, never accepted Plaintiff's petition as the sixty days expired without the lower courts' opinions being produced.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF LAW

Federal Rule Civil Procedure 56(c) authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered "if,

---

1. The Central District denied Plaintiff's petition for writ of habeas corpus because it was the fifth such petition for the same conviction.

Thus, that court dismissed the petition under the AEDPA's rule against successive petitions. *See* 28 U.S.C. § 2244(b).

under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.*

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nonetheless, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party." *Estrada v. Gomez*, 1998 WL 514068, at *2, 1998 U.S. Dist. LEXIS 12831, at *7 (N.D.Cal.1998) (citing *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987)).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[ ]'s favor, could convince a reasonable jury to find for the plaintiff[ ]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir.2000) (citing Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); *see also Paine v. City of Lompoc*, 265 F.3d 975, 984 (9th Cir.2001) ("[I]f a plaintiff cannot in its summary judgment motion factual submissions connect any particular defendant to the incidents giving rise to liability, that defendant is entitled to summary judgment and may not be required to go to trial.").

In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir.1989); *see also Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir.1996) (stating that "mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

However, the nonmoving party's declaration or sworn testimony "is to be accepted as true .... [The non-movant's] evidence should not be weighed against the evidence of the [movant]." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999)

(citing *Foster v. Arcata Assoc.*, 772 F.2d 1453, 1460–61 (9th Cir.1985) ("In her deposition and subsequent declaration in opposition to Arcata's motion for summary judgment, Foster states facts which, if true, could justify an inference that she was qualified for Hamby's position .... Such factual issues may not be resolved in favor of the moving party on summary judgment when, as here, the adverse party has supported its position by evidentiary materials as provided in Rule 56. It is enough that these materials consist of the party's own sworn deposition testimony and declaration in opposition to the motion for summary judgment."); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

## B. ANALYSIS

### 1. Deliberate Interference

In order to succeed on his cause of action for the violation of his due process Fourteenth Amendment rights, Plaintiff must demonstrate "the deliberate, intentional abuse of governmental power for the purpose of depriving a person of life, liberty or property." *Stevenson v. Koskey*, 877 F.2d 1435, 1440 (9th Cir.1989); *see also Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Daniels v. Williams*, 474 U.S. 327, 330–332, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986). Plaintiff must prove that Defendant's conduct was more than mere negligence. *See Davidson*, 474 U.S. at 347, 106 S.Ct. 668; *Daniels*, 474 U.S. at 330–31, 106 S.Ct. 677; *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir.1989); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir.1989); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir.1989). Plaintiff is correct in asserting that he has a constitutional right to access the courts while in prison. *See Lewis v. Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Nevertheless, even if the Court interprets the evidence presented by Defendant in support of the summary judgment motion in the light most favorable to the Plaintiff, the Court finds no evidence of any action by Defendant that would constitute more than mere negligence.

In his opposition to the summary judgment motion, Plaintiff contends that Defendant's act of setting aside his mail in Defendant's office instead of placing it into the outgoing mail constituted gross negligence or deliberate indifference sufficient to maintain his 1983 claim. Defendant argues that Plaintiff has no evidence whatsoever as to what Defendant did or did not do with the mail once he received it and placed it in the office. Indeed, Defendant claims he was not responsible for processing the outgoing mail because his was the third watch and first watch staff are the staff responsible for the mail. Additionally, Defendant claims that he complied with the prison regulations concerning the handling of mail of inmates and that he did not put any mail into the trash on the night of May 13, 2001. (Def.'s Mot. for Summ. Judg., Ex. F ¶¶ 4–5.)

Plaintiff states that the last time he saw his mail was when Defendant Inniss placed it into the office and began closing down the podium area. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 25:14–28:18 & 67:19–25.) Plaintiff testified at his deposition that his basis for his claim rests on his understanding of prison mail policy that Defendant Inniss should have placed his mail in a proper mailbag or in the locked mailbox. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 68:15–17.) He characterizes this failure to perform as deliberate indifference. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 119:16–121:7.) However, he could not testify to anything negative that Defendant Inniss told him that evening that might have indicated deliberate indifference or an intent to harm or throw away Plaintiff's

mail. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 29:2–18.) Additionally, Plaintiff stated that he could not think of any problems he had with Defendant Inniss prior this incident other than instances where Defendant Inniss denied him access to the law library. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 73:11–25.)

Most important, Plaintiff stated that he did not know what Defendant Inniss did or did not do with his mail after he placed it on his desk. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 28:15–29:1.) Plaintiff did not know if Defendant put his mail in the trash. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 67:14–68:3.) Plaintiff did not know whether Defendant was responsible for processing and sending out his mail. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 69:15–70:13.) On the other hand, Defendant claims that he did nothing wrong because he followed the prison's regulations concerning the processing of outgoing mail. (Def.'s Mot. for Summ. Judg., Ex. F ¶ 4.) Donnovan Operating Procedure 26 states that the first watch is responsible for removing outgoing mail to the mailroom. (Def.'s Mot. for Summ. Judg., Ex. E at 7.) Defendant Inniss worked the third watch that evening and so was not responsible for the removal of Plaintiff's letter to the prison's mail room. The prison staff on the first watch the following morning would have had that responsibility. Thus, even viewing the evidence in the light most favorable to Plaintiff, the Court finds no disputed material fact that could suggest a finding of deliberate indifference. Indeed, at the most the Court could find Defendant Inniss was

negligent, which is not sufficient for Plaintiff to maintain a 1983 claim.[2]

### 2. Lack of Harm to Plaintiff

To establish a violation of the right of access to the courts, Plaintiff must demonstrate that he has suffered an actual injury, which is a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis,* 518 U.S. at 349, 116 S.Ct. 2174; *Madrid v. Gomez,* 190 F.3d 990, 996 (9th Cir.1999). An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis,* 518 U.S. at 348, 116 S.Ct. 2174; *see also Madrid,* 190 F.3d at 996; *Keenan v. Hall,* 83 F.3d 1083, 1094 (9th Cir.1996). The Plaintiff must make "a showing that [he] could not present a claim to the courts because of the state's failure to fulfill its constitutional obligations." *Allen v. Sakai,* 48 F.3d 1082, 1091 (9th Cir.1994).

Defendant does not deny that he received Plaintiff's mail,[3] but he does not admit to throwing away Plaintiff's mail. However, Defendant claims that Plaintiff did not suffer any harm, even if the petition had been inadvertently or purposefully misplaced. Following the alleged incident, Plaintiff (with the assistance of the prison litigation coordinator) sent a letter to the U.S. Supreme Court explaining that his materials had been lost. (Def.'s Mot. for Summ. Judg., Ex. I.) In addition, the prison's litigation coordinator sent a letter to the U.S. Supreme Court stating that any delay of a court filing was beyond Plaintiff's control. (Def.'s Mot. for Summ.

**2.** Similarly, even if claims were made against any first watch officers, which they are not, there is no evidence of any malfeasance on their part, except possibly an inference of negligence.

**3.** On the other hand, he does not specifically admit that he handled Plaintiff's mail either. He probably does not remember because the incident occurred over three years ago. Interestingly, Plaintiff's mail log makes no mention of any mail going out on May 13 or 14, 2001. (Def.'s Mot. for Summ. Judg., Ex. G.)

Judg., Ex. J.) Plaintiff then rewrote the petition and sent it to the U.S. Supreme Court. The Supreme Court received it on June 29, 2001 and rejected it for failing to append the lower court opinions. Plaintiff then had 60 days to cure this defect. (Def.'s Mot. for Summ. Judg., Ex. K.) He attempted to obtain copies of the lower court opinions at the Central District of California and the Ninth Circuit. (Def.'s Mot. for Summ. Judg., Exs. L & M.) Evidently, the lower courts did not respond, and Plaintiff was unable to cure this procedural defect to his petition by the due date the Supreme Court gave him.

Assuming that Plaintiff had correctly attached the lower court opinions to his first petition for writ of certiorari and that Defendant intentionally threw away these documents,[4] Defendant may have arguably caused Plaintiff harm then because the Supreme Court could not determine, based on the rewritten petition alone, whether or not the petition was timely. (Def.'s Mot. for Summ. Judg., Ex. K.)

However, Plaintiff still cannot prevail for three reasons. First, Plaintiff should not, in the first instance, have sent his only copies of the lower court opinions because even without intentional interference by prison officials, mail can still be lost accidentally. Second, the Supreme Court gave Plaintiff a 60-day extension to obtain and file the missing lower courts' opinions. The fact that the District Court and the Ninth Circuit Court of Appeals apparently did not respond to Plaintiff's requests for additional copies cannot be a basis for finding of deliberate indifference against Defendant Inniss. Thirdly, Plaintiff can only succeed if he was denied access to the courts for a nonfrivolous claim. *Lewis*, 518 U.S. at 351–53, 116 S.Ct. 2174. On August 3, 2000, Plaintiff's petition for writ of habeas corpus was dismissed by the district court as a successive petition (the fifth on the same conviction) under the AEDPA, 28 U.S.C. § 2244(b). (Def.'s Mot. for Summ. Judg., Ex. A at 6.) On December 5, 2000, the Ninth Circuit denied his appeal of the petition. (Def.'s Mot. for Summ. Judg., Ex. B.) On April 9, 2001, the Ninth Circuit denied his motion for reconsideration. (Def.'s Mot. for Summ. Judg.,

4. The Court does not know if the lower court opinions were in fact attached to the original petition, and the Court is not convinced that Plaintiff's mail went into the trash, whether inadvertently or intentionally. Plaintiff did not see Defendant Inniss place his mail in the trash or hear him tell anyone else to do so. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 28:15–29:1 & 67:14–68:3.) Defendant Inniss stated in his declaration that he did not throw any prisoner's mail in the trash on that evening. (Def.'s Mot. for Summ. Judg., Ex. F ¶ 5.)

Furthermore, Plaintiff has not told his story of the facts in a consistent manner in two instances. First, he stated in his complaint that Defendant Inniss placed the mail in the legal mail box. (4th Am. Compl. at A–3.) In his deposition, he stated that Defendant put the mail in his office. (Pl.'s Opp. to Def.'s Mot. for Summ. Judg., Ex. C at 68:6–7.) Second, he claims he could see his mail in the trash bag the next morning. However, he variously described the trash bag as "open clear" (Pl.'s Opp'n to Def.'s Mot. for Summ. Judg. at 12), as a "dark plastic bag" (4th Am. Compl. at A–3), and as an "open green plastic trash bag" (4th Am. Compl. at A–5). In his deposition, Plaintiff did not object to Defendant's attorney's description of the bag as "dark" until after reviewing the written transcript. (Def.'s Mot. for Summ. Judg., Ex. D at 67:14–18.) These discrepancies place the story in doubt as to whether Plaintiff actually saw any of his mail in the trash bag the morning following the evening he gave his mail to Defendant Inniss to mail out from the prison. Then, somehow, Plaintiff was informed (allegedly by the other prisoner who found the trash bag) that his mail was in that bag, was able to refile his petition with the Supreme Court, and obtained a sixty-day period in which to send copies of the lower court opinions for the petition for writ of certiorari to the U.S. Supreme Court, and proceeded, unsuccessfully, in that attempt.

Ex. C.) As Plaintiff's petition for writ of certiorari related to the denial of his fifth petition for writ of habeas corpus to challenge the same conviction, Plaintiff cannot show any likelihood of success on the merits of his petition. "Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all...." *Lewis,* 518 U.S. at 353 n. 3, 116 S.Ct. 2174. Accordingly, Plaintiff did not suffer any harm even if Defendant had intentionally thrown away his mail.

### 3. Qualified Immunity

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court, in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), has developed the framework in which this Court must evaluate a government official's qualified immunity defense. First, the Court must determine whether, taken in the light most favorable to the allegedly injured party, the government official's conduct violated a constitutional right as a broad general proposition. *Id.* at 201, 121 S.Ct. 2151. If a constitutional violation *could* be made out, the Court must then analyze whether the government official's conduct violated a clearly established right *in the context of the particular case,* not as a broad general proposition. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* ("The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is

doing violates [a clearly established] right.").

Under the first prong of *Saucier,* the Court must determine if the facts, as alleged by the Plaintiff, constitute a violation of a constitutional right. Indeed, as stated above, prison officials cannot deny prisoners access to the courts by interfering with their mail. *See Lewis,* 518 U.S. at 346, 116 S.Ct. 2174. If Defendant Inniss had purposely thrown away Plaintiff's petition for writ of certiorari to the U.S. Supreme Court, then Defendant would have violated his rights. Thus, under the first prong, Defendant is not entitled to qualified immunity. Nonetheless, the Court, under the second *Saucier* prong, must look at the facts of this case to determine if a reasonable officer would have known that his or her conduct violated Plaintiff's constitutional rights. The law governing a prisoner's access to the courts is clear, and any reasonable officer should know that he cannot interfere with that right. Thus, if Defendant Inniss had acted as Plaintiff alleged, then he would not be entitled to qualified immunity. Nevertheless, there is no proof in this case that Defendant's actions were purposeful or that Plaintiff suffered any actual harm such that as a matter of law, Plaintiff cannot prevail on the merits of his claim. Thus, the question of qualified immunity is moot.

## IV. CONCLUSION

The Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED** that no later than *August 20, 2004,* any party to this action may file written objections with the Court

and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties no later than *August 30, 2004.* The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED.**

August 12, 2004.